**UNITED STATES of America, Appellee,**

v.

**Norman TEAGUE, Defendant–Appellant.**

**No. 1466, Docket 95–1665.**

United States Court of Appeals,
Second Circuit.

Argued April 25, 1996.

Decided Aug. 22, 1996.

John-Claude Charbonneau, Assistant United States Attorney, Rutland, Vermont (Charles R. Tetzlaff, United States Attorney for the District of Vermont, David V. Kirby, Chief Criminal Division, of counsel), for Appellee.

Thomas A. Zonay, Rutland, Vermont (Carroll, George & Pratt, Rutland, Vermont, D. Christopher Dearborn, of counsel), for Defendant–Appellant.

Before LUMBARD, VAN GRAAFEILAND and MAHONEY, Circuit Judges.

LUMBARD, Circuit Judge:

Norman Teague appeals from a judgment of conviction and sentence entered on November 8, 1995, in the District Court for the District of Vermont (Billings, *J.*). On May 3, 1995, a jury convicted Teague of possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841. The court sentenced him to 121 months' imprisonment, to be followed by four years' supervised release. The court properly received evidence of Teague's prior sales of cocaine. Congress's failure to adopt proposed amendments to the Sentencing Guidelines to eliminate the disparity between sentences for powder and crack cocaine offenses does not render that disparity unconstitutional. We affirm.

In June 1994, the Rutland City Police Department obtained a warrant to search an apartment at 41 Grant Avenue after receiving information that an individual named Curtis was selling crack cocaine there. On June 21, 1994, several officers arriving to execute the warrant observed Curtis selling drugs on the street. Curtis attempted to flee, but was immediately arrested. In the

apartment, the officers found Curtis's wife, Christine Handy, and his brother, Norman Teague. The officers also found in a cabinet a large zip lock bag containing 141 individual bags of crack cocaine.

Curtis admitted to the DEA agents assisting the police that he was a crack dealer, but claimed that most of the cocaine seized belonged to his brother. Based on this information, a DEA agent and a Rutland police officer persuaded Teague to come to the police station to help obtain Curtis's cooperation in investigating his out-of-state source. Teague initially denied any involvement in Curtis's drug operation, but after conferring with Curtis, Teague admitted that he had obtained two ounces of cocaine in Massachusetts for resale in Rutland and that the bag of cocaine seized at the apartment was his.

On June 30, 1994, a grand jury indicted Teague for possessing crack cocaine "on or about June 21, 1994" with intent to distribute. Before trial, the government informed Teague's attorney that it intended to call three witnesses, Shirley Shelby, Scott Chandler, and Eric Tuepker, who would testify that, in June 1994, Teague had sold them crack cocaine in bags similar to those seized in the Grant Avenue apartment. After Teague objected to their testimony under Federal Rule of Evidence 404(b) as an improper attempt to show he had a criminal propensity, the court admitted the testimony as both direct evidence of the charged offense and as probative of Teague's intent to possess the drugs found in the Grant Avenue apartment.

At trial, the government introduced Teague's confession and the 141 bags of crack cocaine seized at the Grant Avenue apartment. Shelby, Chandler, and Tuepker testified that they had bought $20 bags of crack cocaine from Teague in June 1994. These sales usually took place at the Grant Avenue apartment, and the $20 bags that Teague had sold them appeared identical to the bags seized at the apartment on June 21.

Curtis testified that Teague brought drugs with him when he arrived in Rutland the week preceding his arrest on June 21, and that Teague sold drugs to Shelby and Chandler in that week. Teague agreed that he had first arrived in Rutland on June 16, but he testified that he had not sold any cocaine to Shelby, Chandler, or Tuepker. Teague also said that the drugs seized from the apartment on June 21 belonged to his brother Curtis, and that his confession had been coerced. On May 3, 1995, the jury found Teague guilty. On November 8, 1995, the court sentenced Teague to 121 months' imprisonment, the minimum term recommended by the Sentencing Guidelines, to be followed by four years' supervised release.

■ Teague maintains that the court should not have admitted evidence of his cocaine sales prior to June 21 because such evidence was not direct evidence of the offense charged in the indictment; rather, it only tended to show his criminal propensity. We disagree. Teague's continuous possession between June 16 and June 21 of an inventory of cocaine packaged for distribution constitutes one offense under 21 U.S.C. § 841(a). Cf. United States v. Ravel, 930 F.2d 721, 724 (9th Cir.) (holding that the defendant's possession of thirty stolen items on one day and of twelve additional stolen items seventeen days later constitutes a single act of possession when seized from a single stolen shipment), cert. denied, 502 U.S. 911, 112 S.Ct. 308, 116 L.Ed.2d 251 (1991); United States v. Towne, 870 F.2d 880, 886 (2d Cir.), cert. denied, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989).[1]

■ Teague further contends that by admitting evidence of his sales before June 21, the court impermissibly broadened the scope of the offense charged in the indictment—the possession of cocaine with intent to distribute "on or about June 21, 1994." We disagree. The evidence adduced at trial did not prove facts "materially different from those alleged in the indictment." *United*

---

1. Indeed, it is doubtful whether the government could obtain a separate indictment for each instance of possession without violating the Double Jeopardy Clause. *See United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir.1976) ("[A]cts constitut- ing a course of conduct," such as possession, "are not punishable separately if the Legislature intends to punish the course of conduct."), cert. denied, 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977).

*States v. Helmsley,* 941 F.2d 71, 89 (2d Cir. 1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1992). The government need not prove that Teague's possession of the cocaine occurred on the precise date charged because an indictment date only needs to be "substantial[ly] similar[ ]" to the date established at trial. *United States v. Tramaglino,* 197 F.2d 928, 932 (2d Cir.), *cert. denied* 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670 (1952); *see also United States v. Heimann,* 705 F.2d 662, 666 (2d Cir.1983); *United States v. Baker,* 10 F.3d 1374, 1419 (9th Cir.1993), *cert. denied* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

■■■ The court properly admitted the evidence of Teague's prior cocaine sales as proof of his intent to possess the cocaine found in the Grant Avenue apartment, under Federal Rule of Evidence 404(b).[2] Under that Rule, evidence of other crimes, wrongs, or acts is admissible to prove intent, knowledge, and any "matters other than the defendant's criminal propensity." *United States v. Ortiz,* 857 F.2d 900, 903 (2d Cir.1988) (describing the "inclusionary" approach to evidence of other acts), *cert. denied,* 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989). Proof of state of mind, such as intent and knowledge, is a "proper purpose" under Rule 404(b). *See Huddleston v. United States,* 485 U.S. 681, 691, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988).

■■■ Because there was no evidence that Teague had physically possessed the seized cocaine, the government needed to adduce evidence that he "knowingly [had] the power and the intention at [the] time to exercise dominion and control" over the cocaine to prove possession. *United States v. Hastings,* 918 F.2d 369, 373 (2d Cir.1990) (defining "constructive possession") (quoting *United States v. Pelusio,* 725 F.2d 161, 167 (2d Cir. 1983)). Here the government introduced evidence that, less than one week before the

search of the apartment, Teague possessed several bags of cocaine identical in appearance and packaging to those seized from the apartment and sold them outside the apartment building. The proffered testimony was highly probative of Teague's intent to control the drugs seized from the apartment, given the short interval between the sales and the search, the location of the sales, and the identical packaging. *See Huddleston,* 485 U.S. at 691, 108 S.Ct. at 1502. As the only other evidence of Teague's intent to possess the cocaine was his confession, the reliability of which he challenged, the admission of the evidence was also proper under Federal Rule of Evidence 403 (permitting the exclusion of evidence if its probative value is substantially outweighed by the danger of prejudice).

Our holdings in *Ortiz* and *United States v. Figueroa,* 618 F.2d 934 (2d Cir.1980), are not to the contrary. As Teague denied any intent to possess the cocaine, the evidence was admissible to prove that element of the offense.

■■■ The sentence of 121 months' imprisonment imposed by the court was proper. The Sentencing Guidelines currently treat a quantity of crack cocaine as the equivalent of one hundred times as much powder cocaine in determining a defendant's sentence. *See* U.S.S.G. ch.2, pt. D.[3] Teague claims that this disparity violates the Equal Protection Clause both because it lacks a rational basis and because it was recently reaffirmed by Congress with the intent to discriminate against blacks. We have held that "the greater accessibility and addictiveness of crack" is a rational basis for the disparity. *United States v. Stevens,* 19 F.3d 93, 97 (2d Cir.1994). And in *United States v. Moore,* 54 F.3d 92 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996), we held that Congress and the Sentencing Commission did not enact the 100:1 ratio

---

**2.** Federal Rule of Evidence 404(b) states:
    Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

**3.** The Guidelines ratio is patterned after the 100–to–1 ratio established by Congress in the mandatory five- and ten-year minimum sentences for powder and crack cocaine trafficking. *See* 21 U.S.C. § 841(b).

with a racially discriminatory purpose, despite statistical evidence that the vast majority of crack cocaine offenders are black while many powder cocaine offenders are white. *Id.* at 97–99.

In 1994, Congress directed the Sentencing Commission to report on "the differences in penalty levels that apply to different forms of cocaine" and to offer "any recommendations that the Commission may have for retention or modification of such differences." Pub.L. No. 103–322, § 280006, 108 Stat. 1796, 2097 (Sept. 13, 1994). After an extensive study of the patterns of cocaine use and distribution, the Commission released its report in February 1995. United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* (Feb. 1995). Based on the "relatively sparse empirical evidence available," the Commission found that crack cocaine may pose a greater risk of psychological addiction than powder cocaine; that crack cocaine can be sold more cheaply and in more potent quantities; that there was a higher correlation between crack cocaine and systemic violence; and that an increasing number of young people were being employed in the distribution of crack. *Id.* at 195. The Commission concluded, however, that these factors "do not approach the level of a 100–to–1 quantity ratio." *Id.* at xiv. It also found that 88.3% of crack cocaine offenders were black, while only 27.4% of powder cocaine offenders were black and 32.0% of powder offenders were white. *Id.* at 156. The Commission recommended a reduction in the disparity between sentences for powder and crack cocaine offenses and the adoption of new guideline enhancements to address the "discrete, substantial harms associated with crack offenses." *Id.* at 198.

On May 1, 1995, the Commission submitted to Congress an amendment to the drug sentencing guidelines entirely eliminating the cocaine sentencing disparity and setting sentences for offenses involving equivalent amounts of crack cocaine and powder cocaine at the level currently provided for powder cocaine. Congress rejected the proposed amendments and directed the Commission to recommend further amendments imposing higher sentences for trafficking in crack co-

caine. Act of October 30, 1995, Pub.L. No. 104–38, §§ 1–2, 109 Stat. 334, 334–335. It also directed the Commission to propose a "revision of the drug quantity ratio of crack cocaine to powder cocaine under the relevant statutes and guidelines." *Id.* § 2(a)(2).

We do not believe that Congress reaffirmed the 100:1 sentencing disparity with the intent to discriminate against blacks. In rejecting the proposed amendments, Congress simply decided that the 1:1 ratio proposed by the Sentencing Commission was inadequate and directed the Commission to revise its proposal. There is no evidence that Congress reaffirmed the sentencing disparity "at least in part 'because of,' not merely 'in spite of,' its adverse effects" upon blacks. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Nor does Congress's failure to adopt the Commission's proposal render the current 100:1 ratio unconstitutional for lack of a rational basis. The 100:1 ratio had a rational basis when enacted, and the Commission's continuing consideration of the appropriate sentencing scheme for crack and powder cocaine offenses counsels against judicial intervention. *Cf. United States v. Then*, 56 F.3d 464, 468 (2d Cir.1995) (Calabresi, J., concurring).

Finally, we reject Teague's contention that he should receive a downward departure in his sentence because the 100:1 ratio is a " 'mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). We rejected this argument in *United States v. Haynes*, 985 F.2d 65, 70 (2d Cir.1993). Departures under section 5K2.0 are "intended to be based on atypicalities peculiar to the offender or the particular crime, not class-wide departures based upon the typical offense." *United States v. Booker*, 73 F.3d 706, 710 (7th Cir. 1996) (per curiam). Teague has not shown any atypicality warranting departure.

Affirmed.