UNITED STATES of America, Appellee,

v.

Jose Luis DAMBLU, Defendant–Appellant.

No. 710, Docket 95–1206.

United States Court of Appeals,
Second Circuit.

Argued Oct. 24, 1997.

Decided Jan. 22, 1998.

David Wikstrom, New York City, for Defendant–Appellant.

Nancy Kestenbaum, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Guy Petrillo, Assistant United States Attorney, Southern District of New York, New York City, of counsel), for Appellee.

Before: WINTER, Chief Judge, CARDAMONE, Circuit Judge, and POLLACK,* District Judge.

CARDAMONE, Circuit Judge:

Jose Luis Damblu (defendant or appellant) appeals from a judgment of the United States District Court for the Southern District of New York (Baer, J.), entered April 21, 1995, which, following a jury trial, found him guilty of possession of and conspiracy to distribute a narcotics substance.

We must decide on this appeal, among other issues, whether the cross-examination of defendant's character witnesses prejudiced his defense. Defendant believes that the prosecutor asked the defense witnesses questions that assumed his guilt of the crime charged. As a result of this, defendant claims he was denied a fair trial. We think, recollecting the trial of Galileo for heresy, the Salem witchcraft trials and the trial of the Knave of Hearts where an assumption of guilt was so strong it prompted the Queen to say "Sentence first—verdict afterward," that to avoid these stains on the fabric of a fair trial, courts must diligently guard against this type of unjust questioning. Although in this case we find just such a question to have been asked and answered without harm to defendant, we reiterate our preference to avoid their use altogether.

## FACTS

On September 13, 1994 defendant was charged with conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846, and possession of crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) and 18 U.S.C. § 2.

---

* Hon. Milton Pollack, Senior Judge, United States District Court for the Southern District of New York, sitting by designation.

His three-day jury trial commenced on November 15, 1994.

The government produced evidence that defendant, working with his supplier Juan Ramone and his brother Fernando Damblu, agreed and later attempted to sell two kilograms of crack cocaine to an undercover detective, Arturo Claudio. Agent Claudio, the government's key witness, testified that he was introduced to Damblu at Fox Video, Fernando Damblu's video store, by Rosa Miladys Castillo, a confidential informant working with the federal Drug Enforcement Administration (DEA). During that July 12, 1994 meeting, Damblu offered to sell DEA agent Claudio powdered and crack cocaine and provided free samples. The two men then negotiated a sale, discussing both quantity and price. Claudio further testified that at the conclusion of the meeting Damblu agreed to sell him two kilograms of crack cocaine for $44,000, with delivery to be made on July 15 at the video store. Claudio recounted that on July 15, while Fernando Damblu acted as lookout, defendant displayed the illegal drugs to him. When Damblu handed the narcotics to the agent, other DEA agents entered the premises and arrested him.

Damblu acknowledges his attempt to sell two kilograms of crack cocaine to agent Claudio, but asserts he was entrapped by the conduct of informant Castillo. Entrapment is a defense for which the defendant bears the burden of proof by a preponderance of the evidence. Taking the stand, Damblu testified he had no prior drug dealing experience nor ever used drugs. He stated he became acquainted with his supplier, Juan Ramone, in July 1993, at which time he took the pager number Ramone wrote down for him.

Later in 1993, defendant's testimony continued, he met Rosa Castillo in a hospital where she had gone for a medical consultation regarding her pregnancy and where defendant had also gone with his pregnant wife for her to obtain treatment. Castillo was not acting as an informant for the DEA at this time. Damblu asserted this 18–year–old woman subsequently pursued the acquaintanceship by calling and visiting him at Fox Video, and telling him her life was difficult, that she and the father of her child had broken up, and that she was in dire financial straits. She even called defendant while she was in the Dominican Republic. According to Damblu, after numerous unsuccessful attempts, he was eventually persuaded to try to help her by selling drugs to raise money for her. Defendant proceeded to make plans for what ultimately became the drug transaction with agent Claudio. In particular, he stated that he received the two kilograms of crack from Ramone on credit and gave Ramone nothing in return, except a naked promise to repay him $40,000 after the sale.

Damblu next called informant Castillo as a witness to develop his entrapment defense. Contrary to defendant's testimony, she recalled that Damblu initiated discussions regarding his involvement in drug trafficking and invited Castillo to join him. She claimed to be ignorant of narcotics dealings. Castillo said she decided to approach the DEA because she wanted to help a close friend, who was incarcerated and facing 15 years in prison, get out of prison. Castillo admitted that she maintained communications with Damblu during the time preceding the signing of her cooperation agreement. She described Damblu as eager to enlist her assistance in a drug deal. Later, Castillo contacted Damblu and arranged the first meeting between him and agent Claudio. Defendant next called four character witnesses. They testified to Damblu's good reputation in the community. The government cross-examined each of these witnesses with respect to their opinions about defendant's honesty and history of obeying the law.

On November 17, 1994 the jury convicted Damblu on both counts in the indictment. On April 5, 1995 Judge Baer sentenced defendant under the Sentencing Guidelines to 235 months imprisonment (just short of 20 years), followed by five years of supervised release.

On February 2, 1996 Damblu moved for a new trial pursuant to Fed.R.Crim.P. 33, declaring that he had discovered new evidence showing Castillo committed perjury at his trial. Defendant claims Castillo was the common law wife of a fugitive who jumped

bail on drug trafficking charges. Moreover, he alleges that the incarcerated person for whose benefit Castillo cooperated with the government was actually her brother-in-law, who was serving time for drug trafficking charges. Damblu asserts that Castillo lied in court about the identity of her husband and her relationship with her brother-in-law to protect her husband. The district court denied defendant's motion for a new trial without a hearing.

## DISCUSSION

On appeal, Damblu raises three challenges to his conviction. He maintains that: (1) the crack-cocaine sentencing regime is unconstitutional and insupportable; (2) the district court erred by denying his motion for a new trial on the grounds of newly-discovered evidence; and (3) the prosecutor improperly cross-examined defense character witnesses by asking guilt-assuming questions.

Damblu's first challenge is without merit, and he readily concedes that controlling precedent forecloses this argument. *See, e.g., United States v. Teague,* 93 F.3d 81, 84–85 (2d Cir.1996) (holding that the Sentencing Guidelines' disparity in treating a quantity of crack cocaine as equivalent to 100 times as much powder cocaine for purposes of sentencing does not violate equal protection), *cert. denied,* — U.S. —, 117 S.Ct. 708, 136 L.Ed.2d 629 (1997).

### I Denial of Motion for a New Trial

■ Turning to appellant's other challenges, we address first the trial court's denial of defendant's motion for a new trial. Damblu believes the district court erred in denying his motion to set aside the verdict and order a new trial pursuant to Fed. R.Crim.P. 33. We review a district court's denial of a Rule 33 motion brought on the ground of newly-discovered evidence for an abuse of discretion. *See United States v. Wong,* 78 F.3d 73, 78 (2d Cir.1996).

■ Whether the introduction of perjured testimony requires a new trial initially depends on the extent to which the prosecution was aware of the alleged perjury. To prevent prosecutorial misconduct, a convic-

tion obtained when the prosecution's case includes testimony that was known or should have been known to be perjured must be reversed if there is any reasonable likelihood that the perjured testimony influenced the jury. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *see also Perkins v. Le Fevre,* 691 F.2d 616, 619 (2d Cir.1982). If the government was unaware of a witness' perjury, a court looks to the materiality of the perjury and will grant a new trial only if it firmly believes that "but for the perjured testimony, the defendant would most likely not have been convicted." *Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988). Where the challenged false testimony was elicited by the defense, rather than the prosecution, that circumstance tends to establish the government's unawareness of the perjury. *See Wong,* 78 F.3d at 81–82.

■ In the present case, no evidence of any prosecutorial misconduct exists. Castillo's testimony was not part of the government's case. Rather, Damblu himself called Castillo as part of his defense and elicited the testimony claimed to be perjurious. Even in his brief to this Court, defendant concedes he has no proof that the government was aware of the perjury at the time of trial. Under these circumstances, we apply the stricter standard of materiality, i.e., whether Damblu would not have been convicted had Castillo testified differently. In light of that standard, we see no abuse of the trial court's discretion when it ruled it did not firmly believe Damblu would have been acquitted but for Castillo's perjured testimony.

In our view, assuming the truth of the alleged newly-discovered information, it would not materially affect the jury's view of Castillo's credibility. It would only establish more precisely her relationship with the incarcerated person on whose behalf she offered her cooperation to the government. The jury would still have, as it did at trial, information that Castillo had a strongly vested interest in cooperating with the government.

■ With respect to defendant's claim that this new evidence would suggest Castillo had

greater involvement in and knowledge of the drug trafficking trade than she intimated at trial, we agree with the district court that the information is simply cumulative impeachment evidence. "Nondisclosure of cumulative evidence tending only to further impeach a witness' general credibility is not grounds for granting a Rule 33 motion." *United States v. Gambino,* 59 F.3d 353, 366 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996). At trial, defense counsel examined Castillo's character and attacked her credibility extensively. Defense counsel challenged her motive for cooperating by eliciting testimony that the person for whom she cooperated was her "best male friend," like a "brother-in-law," and a person whom she loved.

Moreover, as already noted, Castillo was not a key witness for the prosecution. *Cf. United States v. Wallach,* 935 F.2d 445, 455 (2d Cir.1991) (reversing convictions based upon testimony of government witness who was, "to say the least, critical to the government['s case]"); *United States v. Seijo,* 514 F.2d 1357, 1360 (2d Cir.1975) (ordering new trial where government witness, who provided "only evidence" connecting defendant to the crime, provided false testimony). The government did not call her to testify, relying instead on agent Claudio, whose testimony was sufficient to overcome Damblu's entrapment defense. Damblu's motion for a new trial was therefore properly denied.

## II Cross-examination of Defense Character Witnesses

■ We pass to appellant's contention that the district court permitted the prosecutor, during the cross-examination of each of his four character witnesses, to ask improper questions in which Damblu's guilt was hypothesized. We review a trial court's ruling on the admissibility of character evidence for an abuse of discretion. *See United States v. Morgan,* 554 F.2d 31, 33–34 (2d Cir.1977) (affording district court broad discretion in ruling on admissibility of character evidence, which "will be reversed only upon a clear showing of prejudicial abuse"); *see also Michelson v. United States,* 335 U.S. 469, 480, 69 S.Ct. 213, 220–21, 93 L.Ed. 168 (1948) (reiterating that district court has "wide discretion" to control cross-examination of character witnesses).

The basis for Damblu's challenge arose during the presentation of his defense. Appellant, as the first witness in the defense case, admitted that he negotiated to distribute and did distribute two kilograms of crack cocaine to agent Claudio. The defense then called Angel Fernandez, Jose Fernandez, Jorge Hurd and Vicente Anderson to give testimony with respect to defendant's character. Those witnesses testified that Damblu had a good reputation in the community, and that in their opinions he was honest and law-abiding.

■ On cross-examination, the government posed the following disputed questions: (1) it asked Angel Fernandez, "When you testified that [Damblu] ha[d] a reputation for being a good guy did you know that he sold two kilograms of crack to an undercover agent?"; (2) it asked Jorge Hurd, "In your opinion a person would not be honest if he went around selling crack, would he?"; (3) it asked Jose Fernandez, "In your opinion, a person would not be honest and law abiding if they sold crack, would they?"; and (4) it asked Vicente Anderson, "In your opinion, a person would not be a good person and honest if they sold crack, would they?" Appellant objected generally to the form of these questions.

Fed.R.Evid. 404(a)(1) permits a criminal defendant to put his good character in issue. Once the defendant has done so, the prosecution is entitled to rebut that evidence and cross-examine the defense's character witnesses. We have imposed limits on the latitude of the government's rebuttal, however. In particular, we have expressly disapproved of the use of "guilt-assuming" questions during the government's cross-examination of a defense character witness. *See, e.g., United States v. Russo,* 110 F.3d 948, 952 (2d Cir. 1997) (holding that the government may not pose guilt-assuming hypotheticals to a defense character witness). In *United States v. Oshatz,* 912 F.2d 534, 539 (2d Cir.1990), we held that hypothetical questions, posed to non-expert character witnesses and based on an assumption of defendant's guilt, should

not be asked because they undermine the presumption of innocence to which a defendant is entitled and suggest that there may be evidence of defendant's guilt in the hands of the prosecutor that goes beyond the evidence before the jury. *See id.*

The cross-examination of three of Damblu's character witnesses did not involve questions that improperly assumed defendant's guilt, for the defendant repeatedly stated to the jury that he committed the criminal acts charged against him in the indictment. During opening statements, defense counsel asserted there would be no dispute that Damblu provided drugs to agent Claudio. Further, appellant himself stated in his testimony that he sold two kilograms of crack cocaine to an undercover agent. Thus, the only issue at trial was whether defendant was entrapped by informant Castillo's conduct.

The affirmative defense of entrapment was first recognized by the Supreme Court 66 years ago in *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). This defense consists of two related elements, both of which have remained constant through the years. To mount an entrapment defense successfully a defendant must establish that (1) the government by its conduct induced the commission of the crime for which the defendant is being prosecuted, and (2) the defendant lacked a predisposition to engage in such criminal conduct. *See id.* at 441, 451, 53 S.Ct. at 212, 216. Entrapment may occur when the conduct at issue was the product and creation of the police. *See id.* But whether a defendant was predisposed to commit the crime is the principal element of the defense, *see United States v. Russell,* 411 U.S. 423, 433, 93 S.Ct. 1637, 1643–44, 36 L.Ed.2d 366 (1973), and it requires the jury to consider whether the defendant was an "unwary innocent" or instead an "unwary criminal" looking for a chance to commit the crime charged. *See Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988).

The key question, as noted in *Russell,* is whether the criminal design came from government officials who planted it in an innocent person's mind and then induced the commission of the crime in order to prosecute. *See* 411 U.S. at 434–35, 93 S.Ct. at 1644–45 (quoting *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820–21, 2 L.Ed.2d 848 (1958), which in turn quoted *Sorrells,* 287 U.S. at 442, 53 S.Ct. at 212–13). Only when the answer to this question is "yes" may a defendant succeed in establishing entrapment as a defense to the crime charged against him.

The trial court acted well within its discretion when it permitted the prosecutor to ask Angel and Jose Fernandez and Vicente Anderson how they would interpret the acts to which Damblu had already admitted. The prosecutor's questions were carefully limited to the uncontroverted fact that Damblu sold crack cocaine to an undercover agent. They did not extend into the disputed entrapment defense from which prejudice could easily arise. *See United States v. Pingleton,* 458 F.2d 722, 725 (7th Cir.1972) (finding that questions assuming the act charged in an indictment were proper when defendant had confessed to that act, but claimed entrapment).

In this case the jury plainly could have found defendant did not have an innocent mind, but rather a predisposition to commit this drug crime, as evidenced by his ready response to the inducement demonstrated by his ability to obtain the two kilograms of crack cocaine on credit from his supplier. *See United States v. Valencia,* 645 F.2d 1158, 1167 (2d Cir.1980) ("The fact that [defendant] was able to get a substantial amount of cocaine on credit ... would support an inference that [defendant] had dealt in cocaine on prior occasions.").

We believe the questions posed to Angel and Jose Fernandez and Vicente Anderson suggested neither that defendant initiated the criminal conduct nor that he was predisposed to commit such a crime. Because the questions did not implicate the entrapment defense, they did not assume his guilt. *See United States v. Smith–Bowman,* 76 F.3d 634, 636 (5th Cir.) (questions assuming act charged in the indictment were proper when defendant conceded she used company credit card for personal use, but claimed she was authorized to do so), *cert. denied,* —— U.S.

——, 116 S.Ct. 2537, 135 L.Ed.2d 1059 (1996); *United States v. Wilson,* 983 F.2d 221, 224 (11th Cir.1993) (per curiam) (questions assuming acts charged in indictment were proper when defendant admitted selling a list of names and credit card numbers to undercover agent, but claimed he lacked intent to defraud); *United States v. Velasquez,* 980 F.2d 1275, 1277 (9th Cir.1992) (questions assuming acts charged in indictment were proper when defendant admitted entering bank and showing bank employee an inactive grenade, but claimed he lacked intent to rob bank).

■ Unlike the questions just discussed, the question posed to character witness Jorge Hurd assumed Damblu's guilt. The government asked Hurd, "In your opinion a person would not be honest if he went around selling crack, would he?" Since a defendant's predisposition is the key element of the entrapment defense, the government can refute the entrapment defense by establishing that the defendant was predisposed to commit the crime charged. *See United States v. Salerno,* 66 F.3d 544, 547 (2d Cir. 1995), *cert. denied,* 516 U.S. 1063, 116 S.Ct. 746, 133 L.Ed.2d 694 (1996).

Here, whether Damblu was entrapped was a disputed fact. By hypothesizing that Damblu "went around selling crack," the government did more than simply restate the fact that Damblu had sold crack cocaine to agent Claudio on July 15, 1994. Instead, the prosecutor's inquiry imputed to Damblu a continuous and on-going involvement in drug trafficking, a level of participation in criminal activity to which he had not admitted. Indeed, had appellant made such an admission, he would have suggested a predisposition to sell drugs, thereby defeating his entrapment defense. *See Valencia,* 645 F.2d at 1167 (finding that "an existing course of criminal conduct similar to the crime for which [the defendant] is charged" is evidence of predisposition) (quoting *United States v. Viviano,* 437 F.2d 295, 299 (2d Cir.1971)), *amended,* 669 F.2d 37 (2d Cir.1981).

Thus, because the question implicated appellant's entrapment defense when it asked

Hurd to assume that Damblu had sold crack on other unspecified occasions—a critical fact in dispute—the district court abused its discretion by allowing the prosecutor to ask it. Nonetheless, we find this error harmless. *See United States v. Paccione,* 949 F.2d 1183, 1202 (2d Cir.1991) (improper guilt-assuming question was harmless error); *Oshatz,* 912 F.2d at 541 (same). The evidence of Damblu's guilt was substantial enough to preclude any reasonable likelihood that this improper questioning contributed to the guilty verdict. Presented with two competing accounts of the events preceding the July 15 arrest, the jury chose Castillo's and agent Claudio's version. As a consequence, although allowing the challenged question to be asked was error, it was, in the context of this case, harmless error.

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the district court is affirmed.