UNITED STATES of America, Appellee,

v.

William T. COLEMAN, Defendant–Appellant,

Beverly Holland and Roxanne M. Stowe, Defendants.

Docket No. 98–1270.

United States Court of Appeals, Second Circuit.

Argued Dec. 9, 1998.

Decided Jan. 21, 1999.

---

David V. Kirby, Assistant United States Attorney, District of Vermont, for Charles R. Tetzlaff, United States Attorney for the District of Vermont, Burlington, VT, for Appellee.

Bradley S. Stetler, Stetler, Allen & Kampmann, Burlington, VT, for Defendant–Appellant.

Before: KEARSE, WALKER, and STRAUB, Circuit Judges..

PER CURIAM:

Defendant-appellant William T. Coleman appeals from a judgment of the United States District Court for the District of Vermont (William K. Sessions, III, *Judge*), convicting him, following the entry of a guilty plea, of possession with intent to distribute cocaine base ("crack" or "crack cocaine") in violation of 21 U.S.C. § 841(a)(1), and sentencing him principally to a 240–month term of incarceration. On appeal, Coleman challenges his sentence, contending that: (1) 21 U.S.C. § 841(b)(1)(A) and the United States Sentencing Guidelines violate the equal protection component of the Fifth Amendment's Due Process Clause because their harsher penalties for offenses involving crack cocaine fall disproportionately on minority defendants; and (2) the District Court erred by including the weight of residual water contained in the crack cocaine attributed to Coleman in determining the amount of narcotic for sentencing. We reject both contentions and affirm.

## BACKGROUND

In March of 1996, Coleman was arrested in the District of Vermont and charged with conspiring to distribute, as well as possessing with intent to distribute, crack cocaine. A superseding indictment filed on April 4, 1996 refined the charges to allege one count of conspiring to distribute crack cocaine, two counts of possessing with intent to distribute crack cocaine, and one count of traveling in interstate commerce with the intent to promote unlawful activity. On August 12, 1996, Coleman, pursuant to a plea agreement, pleaded guilty to one of the possession counts in violation of 21 U.S.C. § 841(a)(1), and the other counts were dropped.

At sentencing, Coleman raised two relevant objections. First, he argued that because the applicable sentencing provisions punish a crime involving a given amount of

crack cocaine as severely as the same crime involving one hundred times an equivalent amount of powder cocaine, and because almost all crack offenses involve minority defendants while a majority of powder cocaine offenses involve white defendants, the sentencing provisions punish minorities more severely than whites and, therefore, violate equal protection principles. Second, Coleman argued that the District Court should exclude the weight of residual water contained in the crack cocaine attributed to him when calculating the amount of the narcotic for sentencing because the water was not consumed with the drug and, therefore, was not part of the narcotic mixture.

The District Court rejected both objections. It then determined that Coleman's offense involved 52.9 grams of crack cocaine, a figure that included arguably up to 3.703 grams of water. Based on this drug quantity, the District Court determined Coleman's base offense level to be thirty-two. *See* U.S. Sentencing Guidelines Manual § 2D1.1. The Court then decreased Coleman's offense level by three for his acceptance of responsibility, *see id.* § 3E1.1, and the resulting base offense level, combined with Coleman's criminal history category of V, yielded a sentencing range of 140 to 175 months' imprisonment. However, because Coleman's offense involved over fifty grams of crack cocaine and because Coleman committed the offense after a final conviction for another felony drug offense, 21 U.S.C. § 841(b)(1)(A) requires that Coleman be sentenced to a minimum term of 240 months' imprisonment. *See also* U.S. Sentencing Guidelines Manual § 5G1.1(c) (providing that where statutory minimum sentence is greater than Guidelines maximum sentence, the statutory minimum becomes the Guidelines range). Accordingly, the District Court sentenced Coleman principally to a twenty-year term of incarceration.

Coleman filed a timely notice of appeal on May 13, 1998.

## DISCUSSION

Coleman raises the same two arguments on appeal that he presented to the District Court during sentencing. Neither argument is availing.

### I. *Equal Protection*

■ Coleman's first claim is that the sentencing provisions for crack cocaine violate equal protection principles because their harsher penalties fall disproportionately on racial minorities. Acknowledging that we have rejected the application of strict scrutiny to the challenged sentencing provisions, *see United States v. Teague*, 93 F.3d 81, 84–85 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 708, 136 L.Ed.2d 629 (1997); *United States v. Moore*, 54 F.3d 92, 96–99 (2d Cir.1995), *cert. denied*, 516 U.S. 1081, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996), and that we, as well as our sister Circuits, have rejected challenges to the provisions under the rational basis test, *see, e.g., United States v. Damblu*, 134 F.3d 490, 493 (2d Cir.1998) (relying on *Teague*, 93 F.3d at 84–85); *United States v. Then*, 56 F.3d 464, 466 (2d Cir.1995); *United States v. Hanna*, 153 F.3d 1286, 1288–89 (11th Cir.1998); *United States v. Washington*, 127 F.3d 510, 516–18 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 2718 (1998); *United States v. Holton*, 116 F.3d 1536, 1548 (D.C.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 736, 139 L.Ed.2d 673 (1998); *United States v. Blanding*, 53 F.3d 773, 776 (7th Cir.1995); *United States v. Singleterry*, 29 F.3d 733, 739–41 (1st Cir.), *cert. denied*, 513 U.S. 1048, 115 S.Ct. 647, 130 L.Ed.2d 552 (1994), Coleman presents a new argument. He contends that because the challenged provisions' impact on minorities presents "recurring constitutional difficulties" and because of recent policy positions announced by the United States Sentencing Commission and the United States Attorney General favoring the elimination or reduction of the sentencing disparity between crack and powder cocaine,[1] the sentencing provisions

---

**1.** *See* United States Sentencing Commission, *Special Report to Congress: Cocaine and Federal Sentencing Policy* (Apr.1997); Letter from U.S. Attorney General Janet Reno and Director of the

Office of National Drug Control Policy Barry R. McCaffrey to President Clinton (July 3, 1997), *printed in Cocaine Sentencing Policy in the Federal Criminal Justice System*, 10 Fed. Sentencing

should be examined under the intermediate level of scrutiny applied in *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Under this intermediate scrutiny, Coleman argues, the sentencing provisions for crack cocaine do not pass constitutional muster because they are not substantially related to an important governmental objective.

■ We find Coleman's argument unpersuasive. In order to trigger intermediate scrutiny, a challenged law must employ some sort of "quasi-suspect classification," *Able v. United States*, 155 F.3d 628, 632 (2d Cir. 1998), or implicate an important, though not constitutional, right, *see Eisenbud v. Suffolk County*, 841 F.2d 42, 45 (2d Cir.1988); *cf. Plyler*, 457 U.S. at 216–24, 102 S.Ct. 2382 (holding that Texas must demonstrate that law barring children of undocumented aliens from schools furthers "some substantial goal of the State" even though undocumented aliens are not a suspect class because education, though not a fundamental right, is nevertheless an important state function). The Supreme Court has rejected the notion that a classification is suspect when "entry into th[e] class ... is the product of voluntary action." *Plyler*, 457 U.S. at 219 n. 19, 102 S.Ct. 2382.

■ In this case, the challenged sentencing classifications distinguish between dealing in crack cocaine and dealing in powder cocaine. These are hardly quasi-suspect classifications. Moreover, the present policy positions of the Sentencing Commission and the Attorney General, although politically significant, do not, in and of themselves, render the sentencing classifications quasi-suspect. A person duly convicted of a crime may be subjected to whatever penalty the statute authorizes, "so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." *Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Penal distinctions based on differences in voluntary conduct thus cannot be arbitrary, but this caveat subjects them only to rational-basis scrutiny, not to

intermediate level scrutiny. We therefore decline to extend *Plyler* by applying intermediate scrutiny to the challenged sentencing provisions. Accordingly, we reject Coleman's equal protection claim.

## II. *Calculation of the Amount of Crack Cocaine*

■ Coleman's second claim is that the District Court improperly included the weight of residual water contained in the crack cocaine attributed to him in determining the amount of the narcotic for sentencing. Coleman contends that in the absence of government evidence indicating that water retained in crack cocaine is actually consumed during the smoking process, the weight of the water should not have been considered part of the narcotic mixture.

■ Title 21, section 841(b)(1)(A) of the United States Code imposes, *inter alia*, mandatory minimum sentences for offenses involving fifty grams or more of "a mixture or substance" containing crack cocaine. Whether residual water should be considered part of a crack cocaine "mixture or substance" under the statute is an issue of law that we review *de novo*.

We have previously held that liqueur in which cocaine is dissolved and transported is not to be included in determining the amount of cocaine for purposes of sentencing. *See United States v. Acosta*, 963 F.2d 551, 554 (2d Cir.1992); *see also United States v. Salgado–Molina*, 967 F.2d 27, 29 (2d Cir.1992) (per curiam) (relying on *Acosta*). We reasoned that:

> Because the creme liqueur must be separated from the cocaine before the cocaine may be distributed, it is not unreasonable to consider the liquid waste as the functional equivalent of packaging material, which quite clearly is not to be included in the weight calculation.
>
> . . . .
>
> ... Function, not form, is critical. Congress [in enacting § 841] was concerned

Rep. 192 (1998); *see also* Darlene Superville: *Clinton–Proposed Cocaine–Sentence Guidelines*

*Hit In Congress*, Associated Press Pol. Serv., July 23, 1997.

**432**

with mixtures that will eventually reach the streets, i.e., consumable mixtures.

*Acosta,* 963 F.2d at 554 (citations omitted).

In contrast to the liqueur in *Acosta,* however, the water in Coleman's crack cocaine was not liquid waste or packaging material. Rather, the residual water was part of the consumable mixture: The crack cocaine, water included, was ready for sale and for use *as it was.* No further distillation or processing was necessary to transform it into a consumable, marketable product. *Cf. Chapman v. United States,* 500 U.S. 453, 461, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (noting that Congress "intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level"); *Acosta,* 963 F.2d at 554 ("Purity is not the focal point of culpability; rather, Congress was concerned with the amount of *consumable* drugs on the market, whether pure or impure.") (emphasis added). As the Seventh Circuit explained in addressing the same issue:

> Cocaine base is made by mixing cocaine and baking soda and boiling it in water, and in so doing, the water becomes mixed with the cocaine base. Users of cocaine base need not wait until the water evaporates before using the drug; nor, for that matter, must users separate the cocaine from the baking soda. All three ingredients are part of a whole, blended together, and therefore comport with the common understanding of "mixture". . . .

*United States v. Tucker,* 20 F.3d 242, 244 (7th Cir.1994) (citation omitted).

Because the residual water contained in Coleman's crack cocaine was part of a useable and saleable narcotic mixture, the District Court properly included it in calculating the amount of crack cocaine for sentencing.

## CONCLUSION

For the foregoing reasons, we affirm Coleman's sentence.