15-1541-cr
United States v. Riley

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of January, two thousand sixteen.

PRESENT: REENA RAGGI,
RICHARD C. WESLEY,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

-----------------------------------------------------------------------
UNITED STATES OF AMERICA,
*Appellee*,

v.                                                      No. 15-1541-cr

DAVID RILEY,
*Defendant-Appellant*,

MATTHEW TEEPLE,
*Defendant.*
-----------------------------------------------------------------------

APPEARING FOR APPELLANT:      JOHN F. KALEY, Doar Rieck Kaley & Mack, New York, New York.

1

APPEARING FOR APPELLEE:     SARAH EDDY MCCALLUM, Assistant United States Attorney (Telemachus P. Kasulis, Michael A. Levy, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on April 29, 2015, is AFFIRMED.

Defendant David Riley stands convicted after a jury trial on three counts of conspiratorial and substantive securities fraud as a tipper of inside information, see 15 U.S.C. §§ 78j(b), 78ff; 18 U.S.C. §§ 2, 371; 17 C.F.R. §§ 240.10b-5, 240.10b5-2, for which he was sentenced to concurrent 78-month prison terms, significantly below his 121 to 151-month Guidelines range. On appeal, Riley challenges the sufficiency of the evidence to support conviction, several evidentiary rulings, the jury instructions, and the calculation of his Guidelines range. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1. Sufficiency of the Evidence

A defendant challenging the sufficiency of the evidence supporting his conviction bears a "heavy burden" because, although our standard of review is de novo, we must affirm a conviction "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Allen, 788 F.3d 61, 66 (2d Cir.

2

2015) (internal quotation marks omitted); see also United States v. Persico, 645 F.3d 85, 104 (2d Cir. 2011).

To prove insider trading as a tipper, the government must demonstrate that a defendant (1) owed a duty of confidentiality respecting material nonpublic information, (2) breached that duty by intentionally or recklessly relating such information to a tippee who could be anticipated to trade thereon, and (3) did so in exchange for personal benefit. See SEC v. Obus, 693 F.3d 276, 289 (2d Cir. 2012); see also United States v. Newman, 773 F.3d 438, 450 (2d Cir. 2014), cert. denied, 136 S. Ct. 242 (2015).

a.      Material Nonpublic Information

Riley argues that the evidence was insufficient to prove his access to the information at issue.   Indeed, he asserts that the evidence established that other persons were the likely source of information conveyed to tippee Matthew Teeple.   In any event, Riley contends that the transmitted information was neither material nor confidential. This challenge fails on the merits.

Although Riley emphasizes that no witness testified that he had "full access" to FNI Web BBB ("BBB"), the internal online database where Foundry stored its worldwide sales data, the trial evidence was sufficient to allow a reasonable jury to find both that Riley had access to such information and that he communicated it to Teeple. See United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) (stating that government may carry its burden through inferences reasonably drawn from totality of circumstantial evidence).

3

For example, the head of FBOL (the portal through which Foundry employees accessed BBB) testified that Foundry's Information Technology ("IT") department—which Riley headed as Foundry's Chief Information Officer ("CIO") and Vice President for Information Systems and IT—had worldwide access to the BBB database, and that Riley was responsible for FBOL's operating functionality. Further, trial evidence showed Riley accessing BBB through FBOL 57 times, with several logins occurring while Riley was on the phone with Teeple or the night before a meeting between the two men.

Evidence was also adduced that on July 1, 2008, Riley was among the few Foundry officials provided with confidential information about an anticipated Brocade-Foundry deal. Two weeks later, on the morning of July 16, 2008, Riley met with Teeple, after which Teeple contacted 15 people, all of whom traded or caused their funds to trade in a way that bet on an increase in Foundry's stock price. Not only do these circumstances admit a reasonable inference that Riley conveyed information about the Brocade-Foundry deal to Teeple, but Riley himself also admitted to FBI agents in 2012 that he "may have" leaked such information to Teeple.

Thus, we need not detail any further evidence to conclude that, even if other persons were also conveying confidential Foundry information to Teeple, the trial evidence was sufficient to permit a reasonable jury to find that Riley had access to such information and communicated it to Teeple.

Riley's contention that the evidence was insufficient to prove the materiality and confidentiality of the information he conveyed merits little discussion. Uncontroverted

4

evidence was adduced that Foundry's worldwide sales data were a very important market metric, Tr. 566, and that a merger with Brocade would have a significant effect on investors' expectations, id. at 585–86. See United States v. Contorinis, 692 F.3d 136, 143 (2d Cir. 2012) ("Information is material when there is a substantial likelihood that a reasonable investor would find it important in making an investment decision."). Further, record evidence demonstrating a significant market reaction to the April 2008 announcement of Foundry's sales data, Tr. 1166, and analysts' surprise at news of a possible Brocade-Foundry deal was sufficient to allow a reasonable jury to find that the information Riley conveyed to Teeple on these matters was not public. See United States v. Contorinis, 692 F.3d at 142.

b.      Anticipation of Tippee Trading

Riley argues that the evidence was insufficient to prove his knowledge that Teeple would use communicated confidential Foundry information for securities trading. But a January 2007 email from Riley to his business partners reveals his knowledge that Teeple worked with several fund managers with a primary focus on technology companies. When this fact is considered together with the nature of the information communicated from Riley to Teeple and the timing of the men's contacts relative to related trading, we cannot conclude that the evidence was so "nonexistent or so meager" that no reasonable jury could find beyond a reasonable doubt that Riley possessed the requisite culpable

knowledge.[1] United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004) (internal quotation marks omitted).

c. Personal Benefit

Riley mistakenly relies on United States v. Newman, 773 F.3d 438, to challenge the sufficiency of the evidence that he exchanged confidential information for personal benefit. Newman holds that when a tipper's expectation of personal benefit is to be inferred from the personal relationship of the tipper and tippee, the government must prove "a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." Id. at 452. That, however, is not this case because the trial evidence admits an inference that Riley, the tipper, received an "immediately pecuniary" tangible benefit, see id. (emphasis in original), in the form of investment advice from Teeple. Such professional advice would constitute a benefit whether or not Riley used or profited from it. See United States v. Jiau, 734 F.3d 147, 153 (2d Cir. 2013) (holding that defendant received personal benefit through invitation to investment club even if he never received any investment tips).[2] Riley, however, did both. Indeed, the quid pro quo nature of Riley's tipping could be inferred from telephone, login, and trading records

---

[1] For the same reason, we reject Riley's challenge to the sufficiency of the evidence supporting his conviction for conspiracy to engage in securities fraud.

[2] In these circumstances, we need not decide whether—in light of Newman—the jury could also have found personal benefit established from evidence of Teeple's help with (1) Riley's work on an outside venture, see App'x 164, or (2) planning Riley's exit strategy following the Brocade-Foundry deal, see id. at 179–80.

6

showing him both logging into the BBB database and making profitable purchases of Motorola and Palm stock at the same time he was on a telephone call with Teeple.

      d.     <u>Venue</u>

Equally meritless is Riley's sufficiency challenge to venue, which the government was required to prove only by a preponderance of the evidence. See <u>United States v. Royer</u>, 549 F.3d 886, 894 (2d Cir. 2008). Whether or not the traders tipped by Teeple acted with the culpable knowledge discussed in <u>Newman</u>, 773 F.3d at 450, a reasonable jury could have found it more likely than not that Riley, as Foundry's CIO, could have foreseen that the trading that would result from his communication of inside information to Teeple would occur in the Southern District of New York, given that Foundry's shares were publicly traded on NASDAQ, located in Manhattan, <u>see</u> Tr. 556, 1062–63. See <u>United States v. Svoboda</u>, 347 F.3d 471, 483 (2d Cir. 2003) (holding venue proper where defendant's only contacts with SDNY were trades executed on New York-based securities exchanges because "savvy investor" could reasonably foresee that trades likely would be executed on such exchange); <u>accord</u> <u>United States v. Geibel</u>, 369 F.3d 682, 697–98 (2d Cir. 2004).

2.     <u>Jury Instructions</u>

      a.     <u>"Personal Benefit" Instruction</u>

Riley argues that the jury instruction regarding "personal benefit" was erroneous under <u>United States v. Newman</u>, 773 F.3d at 452, a decision that issued after Riley had been convicted, but before the district court denied him post-trial relief under Fed. R.

Crim. P. 33.[3]   In these circumstances, we review the challenged instruction for plain error, which we identify only if (1) there is error; (2) that is clear or obvious, rather than subject to reasonable dispute; (3) that affected the defendant's substantial rights, generally by affecting the outcome of the trial; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings.   See United States v. Vilar, 729 F.3d 62, 70 (2d Cir. 2013) (stating that objection to trial court ruling based on supervening legal decision is reviewed for plain error (citing Johnson v. United States, 520 U.S. 461, 466–67 (1997))).

Riley cannot satisfy this standard because, even if the district court's instruction was clearly erroneous, which the parties dispute, any error did not affect his substantial rights, much less the fairness, integrity, or public reputation of the proceedings.[4]   The evidence that Riley exchanged nonpublic information for an immediate pecuniary

---

[3]  The district court charged:

> Finally, you must determine whether Mr. Riley anticipated receiving a personal benefit of some kind from disclosing the information.  The personal benefit does not need to be financial or tangible; it could include, for example, maintaining a useful networking contact, improving Mr. Riley's reputation, obtaining future financial or employment benefits, or just maintaining or furthering a friendship.  But the government must show that Mr. Riley was disclosing inside information to Mr. Teeple for some personal reason, rather than a company-approved purpose, and was obtaining or hoping to obtain some personal benefit, however modest.

App'x 74–75.

[4]  We assume without deciding that Newman would have required a different jury instruction on the element of personal benefit than the one given by the district court.

benefit, which the government highlighted in summation, was sufficiently compelling to leave us with no doubt that a jury instructed consistent with Newman would have found Riley guilty. See United States v. Mandell, 752 F.3d 544, 549 (2d Cir. 2014) ("A defendant is not prejudiced by an infirm instruction if the jury would have necessarily found [him] guilty on one of the properly instructed theories of liability." (internal quotation marks omitted)).[5]

b.      Supplemental Instruction on "Motive"

Riley argues that by giving a negative response to a jury note asking whether the government was required to prove motive on the charged securities crimes, the district court permitted the jury to convict him without making the necessary finding of personal benefit. The argument fails because, for reasons just discussed, the evidence of an immediately pecuniary personal benefit was compelling, and the law does not require proof of motive to support a criminal conviction. See United States v. Chestnut, 533 F.2d 40, 48 (2d Cir. 1976) (holding that absence of motivation is not fatal to government's case where there is sufficient evidence of criminal intent); 1-6 Modern Federal Jury Instructions – Criminal, Inst. 6-18 (stating that if guilt of defendant is proved beyond reasonable doubt, "it is immaterial what the motive for the crime may be"). Moreover, the district court's response directed the jury back to the original charge,

---

[5]  Whether Riley or the government has the burden of demonstrating the effect (or lack thereof) of any error on his substantial rights does not affect our decision. See United States v. Vilar, 729 F.3d at 71 n.5 (questioning whether allocation of burden "will ever be dispositive in this context").

9

which included an instruction advising the jury that it must find personal benefit proved beyond a reasonable doubt.

Accordingly, we reject Riley's jury instruction challenges on the merits.

3.    Evidentiary Rulings

We review Riley's evidentiary challenges for abuse of discretion, see United States v. Cuti, 720 F.3d 453, 457 (2d Cir. 2013), which is not evident here.

a.    Admission of June 15, 2009 Phone Call

The district court admitted as a statement in furtherance of the charged conspiracy, see Fed. R. Evid. 801(d)(2)(E), a June 15, 2009 recording in which Teeple told cooperator Karl Motey that he was going to meet his "best guy from Foundry" at 10:00 a.m. the next day.   App'x 156, 157.   Riley asserts that because there was no evidence that he provided Teeple with confidential information in early 2009, Teeple's statement could not have been in furtherance of any conspiracy then existing between the two men. The argument fails because where, as here, there is evidence of the charged conspiracy's existence before 2009, and no evidence that the scheme had attained its goal or that Riley had withdrawn therefrom, the mere absence of conspiratorial activity in early 2009 is not enough to render the district court's Rule 801(d)(2)(E) ruling "manifestly erroneous." United States v. Samet, 466 F.3d 251, 254 (2d Cir. 2006) (stating standard of review); see United States v. Mandell, 752 F.3d at 552 (stating that "mere cessation" of conspiratorial activity is insufficient to establish conspirator's withdrawal from or end of scheme).

Equally unavailing is Riley's argument that Teeple's statement was not in furtherance of the conspiracy.   The evidence, viewed most favorably to the government,

10

showed that Teeple used various persons to collect and trade upon nonpublic information, that Riley was Teeple's "best" source of such information in Foundry, and that Motey (even after he became a government cooperator) was a frequent recipient of Teeple's tips. This was sufficient to permit the district court to make a preponderance finding of both the existence of the conspiracy and also Teeple's effort to further that conspiracy by communicating—to a person who Teeple thought was a coconspirator recipient of his nonpublic information—details regarding his ongoing relationship with the conspirator (Riley) who was the best source of that information. See United States v. James, 712 F.3d 79, 105–06 (2d Cir. 2013) (holding that statement providing information as to status of conspiracy can be in furtherance thereof); see also United States v. Gupta, 747 F.3d 111, 125 (2d Cir. 2014) (stating that Rule 801(d)(2)(E) requires both declarant and party against whom statement is offered to be members of conspiracy, but does not require that person to whom statement is made also be member).[6]

b.      Limitation on Character Testimony

Riley further argues that the district court unfairly limited the testimony of his character witnesses. Having reviewed the unredacted, sealed transcripts of the proceedings relevant to this issue, we discern no abuse of the broad discretion accorded district courts in admitting or limiting this type of evidence. See United States v. Damblu, 134 F.3d 490, 494 (2d Cir. 1998).

---

[6] Because we discern no error in the admission of Teeple's statement pursuant to Rule 801(d)(2)(E), we need not address the government's additional proffered bases for admission, or its argument that Riley is entitled only to plain error review as a result of his failure to object to its admission on hearsay grounds at trial.

Riley's character witnesses were permitted both to give their opinions and to testify about Riley's reputation for truthfulness, honesty, and "secret keeping." They were permitted to testify generally to the type of work Riley had done with the Central Intelligence Agency and to his responsibility for handling classified information.

Riley nevertheless maintains that this testimony was meaningless without allowing the witnesses to provide the foundational evidence that explained how they could speak with authority on the opinions expressed. We are not persuaded. The limitations imposed by the district court followed directly from the Rules of Evidence, which permit a defendant to offer evidence of a personal opinion or his reputation for a pertinent character trait, see Fed. R. Evid. 404(a)(2)(A), 405(a), but not to offer testimony regarding "specific instances" of conduct in conformity with a trait that is not at issue, see United States v. Doyle, 130 F.3d 523, 542 (2d Cir. 1997); see also United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984) (upholding ruling limiting character evidence to fact of defendant's employment with intelligence agencies and involvement in covert operations). To the extent that any excluded testimony could not be characterized as describing specific instances of conforming conduct, the district court acted well within its authority under Fed. R. Evid. 403 in concluding that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. See United States v. Wilson, 750 F.2d at 9.

Thus, we find no abuse of discretion.

c.    Excluded Defense Exhibits

Nor was there abuse of discretion in the district court's decision not to admit certain publicly available information offered by the defense.   As to public information about the companies in whose stock Riley traded, the district court properly determined that such evidence was irrelevant under Fed. R. Evid. 401, given Riley's failure to demonstrate that he ever saw these materials when trading, despite the court suggesting "a lot of ways of proving it."   Tr. 1902.   As for evidence of the failed Intuit transaction, there was no legitimate basis for Riley to argue that he was aware of this news, or that it could have been the subject of his April 2, 2007 email to Teeple.   While Riley claims the jury was entitled to infer his awareness from the government's characterization of him as a "sophisticated investor," the district court's rejection of this argument easily fell within the range of permissible decisions available to it.

4.    Calculation of Guidelines Range

Riley challenges his sentence, asserting procedural error in the calculation of his Sentencing Guidelines range.   See United States v. Cavera, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (recognizing miscalculation of Guidelines range as procedural error). In evaluating this claim, we review "primarily legal" questions de novo, and "primarily factual" determinations for clear error.   United States v. Hsu, 669 F.3d 112, 120 (2d Cir. 2012) (internal quotation marks omitted); see United States v. Carr, 557 F.3d 93, 103 (2d Cir. 2009) ("[T]he interpretation of a sentencing guideline is a question of law." (internal quotation marks omitted)).   Neither of Riley's arguments withstands the appropriate scrutiny.

First, we discern no clear error in the district court's consideration of trading by Artis Capital Management, LP—tippee Teeple's hedge-fund employer—in making the U.S.S.G. § 2B1.4 calculation of the "gain" resulting from Riley's offense. The background commentary to that Guideline states that "gain" includes "value realized through trading in securities" by persons "to whom the defendant provided inside information." Id. § 2B1.4 cmt. background; accord United States v. Royer, 549 F.3d at 904 & n.19. The trial evidence not only permitted the jury to find beyond a reasonable doubt that Riley knew Teeple would trade on the communicated inside information but also permitted the sentencing judge to make a preponderance finding that Riley knew Teeple would do so as the agent of a hedge fund. Thus, the district court properly considered the Artis trading in assessing the seriousness of Riley's offense.

Second, the district court correctly rejected Riley's argument that gain "result[s] from [an] offense" only when a trading position taken on the basis of inside information is liquidated. Riley offers no support for this view, and the relevant Guidelines commentary signals otherwise. It defines "gain" under § 2B1.4 as the "value realized through trading in securities," U.S.S.G. § 2B1.4 cmt. background (emphasis added), a figure reasonably determined by reference to the market price once the inside information has been revealed, not the profit (or loss) realized by the tippee, whose hold decisions may be informed by various factors. This comports with the Supreme Court's observation that insider trading reflects a breach of duty owed by the tipper to the entity whose confidential information was disclosed. See, e.g., Dirks v. SEC, 463 U.S. 646, 661–62 (1983); accord United States v. Newman, 773 F.3d at 445–46. Indeed, Riley

14

himself recognizes the problem with his reasoning in acknowledging the need for loss avoidance to "work somewhat differently." Appellant's Reply 49 & n.36. That distinction has no basis in either the Guidelines' text or precedent.

Accordingly, we conclude that Riley's substantially below-Guidelines sentence is not infected by procedural error.

5. Conclusion

We have considered Riley's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

<div style="margin-left: 40%;">

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

</div>