06-0198-cr
U.S. v. Salazar

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: March 21, 2007                                    Decided: June 13, 2007)

Docket No. 06-0198-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

*-v.-*

JAIME A. SALAZAR,

*Defendant-Appellant.*

_____

BEFORE:          SACK, B.D. PARKER, HALL, *Circuit Judges.*

_____

Appeal from a final judgment of the United States District Court for the Southern District of New York.  Because district judges are required to apply a preponderance of the evidence standard when finding facts relevant to Sentencing Guidelines calculations, the District Judge committed no error in applying that standard.  Affirmed.

_____

J. SCOTT PORTER, Syracuse, NY, *for Defendant-Appellant.*

KATHERINE POLK FAILLA, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Boyd M. Johnson, Assistant United States Attorney, *on the brief*), New York, NY, *for Appellee.*

_____

1

PER CURIAM:

Defendant Jaime A. Salazar ("Salazar") appeals from a final judgment of the United States District Court for the Southern District of New York (Wood, *J.*) sentencing Salazar to 168 months' imprisonment to be followed by five years' supervised release and imposing a $100 special assessment. For the reasons that follow we affirm the judgment.

## I. Background

In November 2000, Federal Bureau of Investigation ("FBI") agents became aware of a cocaine distribution conspiracy operating in the New York City area and began an investigation of that conspiracy by conducting surveillance and intercepting conversations through the use of court-ordered wiretaps. The agents learned, through wiretaps they had placed on telephones used by Carlos Silverio and Roberto Rodriguez, that a large delivery of cocaine was about to take place. They then established surveillance on Silverio and Rodriguez. The next day, the agents observed Edwardo Suarez meet with Silverio and Rodriguez at Rodriguez's apartment in the Bronx and leave with a black bag. The agents stopped Suarez, recovered the bag—which contained twenty kilograms of cocaine—and arrested him. Based on the wiretaps, the agents determined that Salazar and Omar Lavado had, through their assistant, supplied that cocaine to intermediaries Silverio and Rodriguez. The recorded conversations and surveillance yielded evidence of Salazar's role as a supplier in a conspiracy to traffic cocaine.

An indictment filed September 25, 2001, charged Salazar with conspiring with others to distribute and possess with intent to distribute forty-eight kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). The indictment also charged sixteen other individuals in addition to Salazar. Ten months later, Salazar pleaded guilty without a plea agreement before

2

Magistrate Judge Peck who accepted Salazar's guilty plea by written order. The Probation Office prepared a Pre-sentence Investigation Report which recommended a Sentencing Guidelines range of 121 to 151 months' imprisonment based on a base offense level of thirty-four, a two-level adjustment for acceptance of responsibility, and Salazar's lack of a criminal history (placing him in Criminal History Category I). The Probation Office stated that the information available did not support any enhancement for Salazar's role in the conspiracy. Prior to sentencing, the Government urged a four-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 3B1.1(a) asserting that Salazar played a leadership role in an offense involving five or more participants. Salazar opposed the enhancement. He testified that Lavado was the true leader of the conspiracy and that his own participation was limited.

The District Court held a *Fatico* hearing to resolve the extent of Salazar's role in the conspiracy. It determined by a preponderance of the evidence that Salazar was a "leader" under § 3B1.1(a), basing the finding on: (1) the credible testimony of law enforcement personnel; (2) a drug ledger that revealed the scope of the conspiracy and the amount of drugs involved; and (3) recorded conversations between Silverio and one of Salazar's assistants and Silverio and Salazar.

Judge Wood sentenced Salazar to 168 months' imprisonment to be followed by five years of supervised release and a special assessment of $100. The sentence was based on a base offense level of thirty-four, an addition of four levels for Salazar's leadership role, a three-level reduction for acceptance of responsibility, and Criminal History Category I, which yielded a range of 168 to 210 months' imprisonment. Salazar appealed the sentence to this Court arguing that the District Court erred in applying a preponderance of the evidence standard rather than requiring proof beyond a reasonable doubt to find Salazar played a leadership role in the

3

conspiracy. In December 2004, this Court affirmed the judgment but withheld its mandate as *United States v. Booker*, 543 U.S. 220 (2005), was then pending before the Supreme Court. Upon the Supreme Court's decision in *Booker* and this Court's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), we remanded for re-sentencing.

In November 2005, the District Court conducted a *Crosby* re-sentencing hearing. After reviewing the 18 U.S.C. § 3553(a) factors and hearing argument from both sides, Judge Wood determined that she was "constrained" to apply a preponderance of the evidence standard in determining for Guidelines purposes whether Salazar had a leadership role in the conspiracy and that the previously imposed sentence was appropriate under *Crosby*. Salazar now appeals, arguing only that the District Court erred as a matter of law in failing to recognize that, post-*Booker*, while entitled to apply a preponderance of the evidence standard in determining Salazar's role in the conspiracy, the sentencing court had the discretion, if it so chose, to apply a more stringent standard, including proof beyond a reasonable doubt.

## II. Discussion

Before the implementation of the Guidelines, we required use of a preponderance of the evidence standard because it properly balanced the defendant's due process rights with the "long history of judicial discretion in sentencing, the strong interest in judicial economy, and the fact that already over-burdened trial courts would be greatly disserved by the time-consuming hearings that would be constantly called for under any higher standard." *United States v. Lee*, 818 F.2d 1052, 1057 (2d Cir. 1987). This requirement was reaffirmed under the Guidelines. *See United States v. Guerra*, 888 F.2d 247, 251 (2d Cir. 1989). Thus, to succeed in his argument, Salazar must overcome this Court's seemingly dispositive statement in *United States v. Vaughn*,

4

430 F.3d 518, 526 (2d Cir. 2005), that "district courts remain statutorily obliged to calculate Guidelines ranges in the same manner as before *Booker* and to find facts relevant to sentencing by a preponderance of the evidence." Salazar argues that, despite our contrary pronouncement in *Vaughn*, no statute expressly imposes a preponderance of the evidence standard and *Booker* affords judges "the discretion to use a more stringent standard of proof should [they] so choose." We disagree.

In *Crosby*, we explained that, notwithstanding *Booker*, because district courts remain statutorily obliged under 18 U.S.C. § 3553(a) to "consider" the Guidelines, they remain statutorily obliged to calculate a Guidelines range and to do so "in the same manner" as they did pre-*Booker*. *Crosby*, 397 F.3d at 111-12. As we further explained in *United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d Cir. 2005), and reiterated in *Vaughn*, the statutory requirement to determine a Guidelines range, and do so in the same manner as before *Booker*, necessarily means that facts relevant to sentencing must be found by a preponderance of the evidence. This is so because the preponderance of the evidence standard prescribed by the Guidelines for resolving disputed issues of fact relevant to sentencing was mandatory pre-*Booker*. *See* U.S.S.G. § 6A1.3 (commentary) ("The Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."); *United States v. Cordoba-Murgas*, 233 F.3d 704, 708-09 (2d Cir. 2000) (holding that the preponderance of the evidence standard is mandated by the Guidelines and drawing a distinction between the standard for proving a fact relevant to sentencing and the weight such a fact should be accorded once proven).

In other words, the discretion afforded district judges by *Booker* applies only to their consideration of a Guidelines range as one of the § 3553(a) factors *after* that range has been calculated. *Booker* does not affect a district judge's obligation to perform a Guidelines calculation or the burden of proof applicable to facts relevant to sentencing upon which that Guidelines calculation is made. *See Crosby*, 397 F.3d at 111-12; *see also Guerra*, 888 F.2d at 251; *Lee*, 818 F.2d at 1057. Here, the District Court's determination that Salazar had a leadership role in the cocaine conspiracy was a finding upon which the Guidelines calculation was based. Because the above cited cases make it clear that *Booker* has no effect on the standard of proof applicable to such fact-finding, we conclude that the district court was required to use the preponderance of the evidence standard, as it did, in finding facts relevant to sentencing for Guidelines calculation purposes.

### III. Conclusion

For these reasons, the judgment of the District Court is affirmed.

6