12-1967(L)
United States v. Mandell

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: May 2, 2013          Decided: May 16, 2014)

Docket No. 12-1967, 12-2090

United States of America,

*Appellee,*

— v.—

Ross H. Mandell, Adam Harrington,

*Defendants-Appellants,*

Stephen Shea, Arn Wilson, Robert Grabowski, Michael Passaro,

*Defendants.*

Before: WESLEY, CARNEY, AND WALLACE,[*] *Circuit Judges*:

Appeal from May 7, 2012 judgments of conviction of the United States District Court for the Southern District of New York (Crotty, *J.*) for conspiracy to commit securities fraud, wire fraud, and mail fraud, in violation of 18 U.S.C. § 371; securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; wire fraud, in violation of 18 U.S.C. § 1001; and mail fraud, in violation of 18 U.S.C. §§ 1343 & 2. Defendants' principal challenge on appeal is that their convictions for

---

[*]Judge J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

securities fraud should be reversed for a lack of sufficient evidence of domestic securities transactions. Applying *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013), we conclude that the jury was presented with sufficient evidence of domestic transactions from which it could find the essential elements of defendants' securities fraud convictions. Accordingly, we affirm the judgments of conviction. Defendant Mandell also contends, and the government concedes, that the district court's forfeiture order should have made the defendants jointly and severally liable for forfeiture. Solely as to this issue, we vacate and remand so that the district court may amend the forfeiture order.

---

KATHERINE R. GOLDSTEIN, (Michael Gerber and Brent S. Wible, *on the brief*), Assistant U.S. Attorney, *for Appellee* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

MATTHEW W. BRISSENDEN, Garden City, NY, *for Defendant-Appellant* Ross H. Mandell.

SCOTT J. SPLITTGERBER, (Michael F. Bachner and Howard Weiner, *on the brief*), Bachner & Associates, P.C., New York, NY, *for Defendant-Appellant* Adam Harrington.

---

PER CURIAM:

Defendant-Appellants Ross Mandell and Adam Harrington appeal from judgments of conviction entered on May 7, 2012, in the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*), following a five-week jury trial. The jury found both Mandell and Harrington guilty of all four of the counts charged against them: (1) conspiracy to commit securities fraud, wire fraud, and mail fraud, in violation of 18 U.S.C. § 371; (2) securities fraud, in violation of 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. § 2; (3) wire fraud, in violation of 18 U.S.C. § 1001; and (4) mail fraud, in violation of 18 U.S.C. §§ 1343 & 2. As to

2

Mandell, the district court imposed a term of 144 months imprisonment, and ordered him to pay forfeiture in the amount of $50 million, a $10,000 fine, and a $400 mandatory special assessment. As to Harrington, the district court imposed a term of 60 months imprisonment, and ordered him to pay forfeiture in the amount of $20 million and a $400 mandatory special assessment. In this appeal, both Mandell and Harrington contend that their convictions should be overturned on a variety of grounds. In addition, Mandell challenges his sentence as procedurally unreasonable.

The principal challenge raised by both Mandell and Harrington is that their convictions for securities fraud should be reversed, insofar as there was insufficient evidence of domestic securities transactions occurring within the statute of limitations. This argument is governed by our recent opinion in *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013), in which we concluded, following the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), that "a defendant may be convicted of securities fraud under Section 10(b) [of the Securities Exchange Act of 1934] and Rule 10b-5 only if he has engaged in fraud in connection with (1) a security listed on a U.S. exchange, or (2) a security purchased or sold in the United States." *Vilar*, 729 F.3d at 67. Thus, we held that Section 10(b) does not "apply extraterritorially in criminal cases." *Id.* at 74.

Having made clear that Section 10(b) and Rule 10b-5 cannot apply to "extraterritorial criminal conduct in light of *Morrison*," we explained how to determine "whether a security not listed on an American exchange was purchased or sold in the

3

United States." *Id.* at 76. As we stated, our test is: "[a] securities transaction is domestic when the parties incur irrevocable liability to carry out the transaction within the United States or when title is passed within the United States." *Id.*, *citing Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012). We went on to explain that a "domestic transaction has occurred when the purchaser [has] incurred irrevocable liability within the United States to take and pay for a security, *or . . .* the seller [has] incurred irrevocable liability within the United States to deliver a security." *Id.* (internal quotation marks and citation omitted).

With *Vilar*'s holding in mind, we turn to the facts of this case. We review *de novo* challenges to the sufficiency of the evidence, and will "affirm [a conviction] if the evidence, when viewed in its totality and in the light most favorable to the government, would permit any rational jury to find the essential elements of the crime beyond a reasonable doubt." *United States v. Abdulle*, 564 F.3d 119, 125 (2d Cir. 2009) (internal quotation marks and citation omitted). In reviewing a claim that evidence was insufficient to sustain a defendant's conviction, we draw "all inferences in the government's favor and defer [] to the jury's assessments of the witnesses' credibility." *United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010). To succeed on a challenge to the sufficiency of the evidence, a convicted defendant "bears a heavy burden." *Abdulle*, 564 F.3d at 125 (internal quotation marks omitted).

Viewing the evidence in this light, we hold that there was sufficient evidence of domestic transactions to sustain Mandell and Harrington's convictions for securities

4

fraud. The jury considered evidence of five private placement offerings relating to three entities--Global Secure, Sky Capital Enterprises, and Sky Capital Holdings. Investors in the Global Secure private placement were required to submit purchase applications and payments to the company in the United States; the company had discretion to accept or reject those applications on receipt. Under *Vilar*, these were "domestic transactions." *Vilar*, 729 F.3d at 76. Investors also made domestic purchases of private placement shares of Sky Capital Enterprises. In light of this evidence of domestic transactions, and viewing the evidence "in the light most favorable to the government," a "rational jury" could have found the "essential elements" of Mandell and Harrington's convictions beyond a reasonable doubt. *Abdulle*, 564 F.3d at 125.

Mandell argues in the alternative that even if the evidence of domestic transactions was sufficient to convict him of securities fraud, his conviction should nonetheless be set aside due to the district court's extraterritorial instructional error. We disagree. Where a jury is "instructed on multiple theories of liability, one of which is defective," our task is to "ascertain whether a flawed instruction had a substantial and injurious effect or influence in determining the jury's verdict." *United States v. Ferguson*, 676 F.3d 260, 276 (2d Cir. 2011) (internal quotation marks and citations omitted). A defendant is not prejudiced by an "infirm instruction" if "the jury would have necessarily found [him] guilty on one of the properly instructed theories of liability." *Id.* at 277 (citations omitted). Here, as stated above, there was sufficient

evidence of domestic fraud, which means that if the jury had been instructed as Mandell suggests regarding extraterritorial criminal liability for securities fraud, it would still have necessarily reached the verdict it did.

We also disagree with Mandell's argument that his and Harrington's mail fraud and wire fraud convictions should be overturned because the government failed to introduce evidence, and the district court failed to instruct the jury, about the requirements of English law. As to this issue, Mandell relies upon *Pasquantino v. United States*, 544 U.S. 349 (2004) and *United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000). However, both *Pasquantino* and *Pierce* are not controlling. *Pasquantino* involved defendants who were convicted of wire fraud for smuggling liquor from the United States into Canada to avoid paying Canadian excise taxes. 544 U.S. at 353. The Supreme Court held that the right to collect taxes is a property right, and that the defendants' attempt to deprive the Canadian government of that right constituted a deprivation of "property." *Id.* at 356–57. In this context, the Court explained that it would be necessary to offer "proof of foreign law" in order to determine what "property interests" are at stake in a case, insofar as such interests are creatures of "foreign law." *Id.* at 371 n.13. Here, by contrast, the purpose of the criminal scheme was to deprive its victims of their *money*, not their more abstruse "property interests" as those would be defined by foreign law. Thus, *Pasquantino* does not apply. Likewise, *Pierce* also involved defendants who were charged with wire fraud based on a scheme to smuggle alcoholic beverages across the Canadian border. 224 F.3d at 160. As in

6

*Pasquantino*, we held that this charge was predicated on the deprivation of a property right--namely, the Canadian government's "right to collect money in tax and duty revenue"--which meant that the "prosecution had to prove the existence of such a right." *Id.* at 165. *Pierce* also does not apply to a situation such as this one, in which the object of the criminal scheme was to defraud its victims of money rather than a "property right."

Likewise, we reject Mandell and Harrington's arguments that the district court erred in other respects with regard to the jury instructions. First, Mandell contends that the district court erred by instructing the jury that it was not required to find an actual misrepresentation in order to convict for mail or wire fraud. Even if the instruction were erroneous, any error would be harmless, because, as is pointed out below, there was evidence that Mandell made actual misrepresentations, which means that it is "clear beyond a reasonable doubt that a rational jury" would have found him guilty regardless of the allegedly erroneous instruction. *See United States v. Pimentel*, 346 F.3d 285, 302 (2d Cir. 2003) (citation omitted). Second, Mandell contends that the district court erred by charging the jury regarding "implied price representations." Because there was no objection at trial to this instruction, we review for plain error. *See, e.g., United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009). Such a finding requires "(1) error, (2) that is plain, and (3) that affects the defendant's substantial rights." *Id.* (citation omitted). Because the government presented evidence that brokers sold private placements by pegging the value of the private shares to public stock, it was

not plain error for the district court to conclude that the "implied representation" doctrine applied. Third, Mandell and Harrington contend that the district court made substantive charging errors with regard to their conspiracy convictions. Because this argument is predicated on contentions we have already rejected regarding other suggested instructional errors made by the district court, we reject it as well. Finally, Harrington contends that the district court violated Fed. R. Crim. P. 30(b) by modifying its charge on advice of counsel after summations had been given. Because any possible error in this regard was cured by the district court's subsequent instruction to the jury, we reject this contention. *See United States v. Lewis*, 362 F.2d 759, 763 (2d Cir. 1966).

Mandell argues unpersuasively that there was insufficient evidence of material misrepresentations and that the evidence was insufficient to establish a duty to disclose commission payments. As to the material misrepresentations, there was evidence that Mandell falsely told victims that there "were absolutely no risks involved" in making certain securities purchases, even while he was telling his associates that making money on such purchases was "almost equivalent to buying a lottery ticket." There was also evidence that brokers had been instructed by Mandell on how to "pitch" private placements deceptively to potential investors. As to the duty to disclose, our cases make clear that brokers have a duty to disclose in this context. *See, e.g., United States v. Santoro*, 302 F.3d 76, 80–81 (2d Cir. 2002) (holding that a "broker has an affirmative duty to disclose all relevant information, including

8

the receipt of excessive commissions," and stating that a "customer relying on a broker's recommendation would want to know information about the broker's receipt of extraordinary commissions in exchange for his recommendation of the stock because . . . it would raise a 'red flag' that the broker had reason to misrepresent the quality of the investment"); *see also United States v. Szur*, 289 F.3d 200, 211–12 (2d Cir. 2002).

We disagree with Harrington's argument that the government failed to establish that he engaged in any conduct justifying mail fraud or wire fraud convictions. Insofar as this argument is predicated on the contention that the government needed to establish "proof" of foreign law under *Pasquantino* and *Pierce*, we reject it for the reasons stated above. Insofar as this argument is predicated on the contention that the victims of his scheme were "foreign clients," it is foreclosed by our precedent. *See United States v. Trapilo*, 130 F.3d 547, 551–52 (2d Cir. 1997) (explaining that under the mail fraud and wire fraud statutes, "what is proscribed is use of the telecommunication systems of the United States in furtherance of a scheme whereby one *intends* to defraud another of property," and that the "identity and location of the victim, and the success of the scheme, are irrelevant" for liability under these statutes).

We do not accept Mandell's argument that the district court erred by permitting certain witnesses to testify that failing to disclose financial incentives was illegal. Mandell's argument as to this issue relies on *United States v. Scop*, in which we considered the testimony of an SEC investigator who was called by the government as

9

an expert witness on "securities trading practices." 846 F.2d 135, 138 (2d Cir. 1988). Because the witness "drew directly upon the language of [a] statute and [its] accompanying regulations" and testified as to whether the defendant had violated that statute, we concluded that his testimony constituted improper "legal conclusions." *Id.* at 140. Here, by contrast, the witnesses at issue did not testify that the defendants violated a statute, but merely explained why, in their opinion, certain commissions had been referred to as "bonuses." As we have explained, following *Scop*, the mere fact that a witness opines that a defendant's activity was "illegal" does not necessarily mean that a district court would commit error by allowing such testimony. *See, e.g.,* *United States v. Schwartz*, 924 F.2d 410, 426 (2d Cir. 1991). Accordingly, the district court did not err under *Scop* in regard to this testimony.

We do not accept Mandell's argument that the district court erred in denying the motion to suppress he filed pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied the motion to suppress without a hearing, holding that Mandell had failed to make a substantial preliminary showing of a *Franks* violation. Ordinarily, a search carried out "pursuant to a warrant is presumed valid." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). However, in "certain circumstances," *Franks* permits a defendant to "challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure." *Id., citing Franks*, 438 U.S. at 164–72. To invoke the *Franks* rule, a defendant is required to show: (1) "that there were intentional and

10

material misrepresentations or omissions" in the warrant affidavit, and (2) that the "alleged falsehoods or omissions were necessary to the . . . probable cause finding." *Id.* at 64–65. We review the first of these findings for clear error, while we review the second *de novo*. *Id.* at 65. Upon review, the district court did not clearly err in rejecting Mandell's arguments that the agent in question made intentional and material misrepresentations and omissions in his affidavit. Accordingly, we affirm the district court's holding that Mandell failed to make a substantial preliminary showing of a *Franks* violation and the district court's decision to deny his motion to suppress.

We also disagree with Harrington's argument that the district court erred in allowing certain recorded conversations to be entered into evidence at trial against him. He argues that the conversations at issue were improperly admitted, on the grounds that they were merely "idle chatter," were made after he had "clearly withdrawn from the conspiracy," and were unduly prejudicial. "[A] district court may admit an out-of-court declaration that would otherwise be hearsay [pursuant to Fed. R. Evid. 801(d)(2)(E)] if it finds by a preponderance of the evidence (a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012) (internal quotation marks and citations omitted). "Statements in furtherance of a conspiracy prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity." *United States v. Desena*, 260 F.3d 150, 158 (2d

11

Cir. 2001) (internal quotation marks and citation omitted). Such statements "need not be commands, but are admissible if they provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *Id.* (internal quotation marks and citations omitted). We review the district court's admission of such evidence "only for clear error." *Coppola*, 671 F.3d at 246.

Under this standard, we hold that the district court did not clearly err in admitting the conversations at issue. First, the district court did not clearly err in finding that Harrington did not withdraw from the conspiracy. The burden of proof was on Harrington to demonstrate withdrawal, *United States v. Leslie*, 658 F.3d 140, 143 (2d Cir. 2011), and "[m]ere cessation of the conspiratorial activity . . . is not sufficient to prove withdrawal." *Id.* Instead, Harrington was required to "present evidence of some affirmative action" that he took to "disavow or defeat the purpose" of the conspiracy. *United States v. Salameh*, 152 F.3d 88, 150 (2d Cir. 1998) (internal quotation marks and citation omitted). Far from taking affirmative steps to "disavow or defeat" the conspiracy, Harrington went on to seek payment of Sky shares from Mandell, even though those shares would have been worthless had the conspiracy not been ongoing. Moreover, each of the conversations at issue included discussion of the progress of the conspiracy sufficient to render them admissible. *Desena*, 260 F.3d at 158.

Harrington also incorrectly argues that prosecutorial misconduct deprived him of a fair trial. This argument is predicated on Harrington's contention that the government, "in bad faith," stated before the jury that Harrington's letter of resignation was evidence of his guilt. "Prosecutorial misconduct is a ground for reversal only if it causes the defendant substantial prejudice by so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (internal quotation marks and citations omitted). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct." *Id.* (internal quotation marks and citation omitted). Here, even if it is true, as Harrington contends, that the language contained in Harrington's letter of resignation is "boilerplate" in the industry, it does not follow that the prosecutor committed "egregious misconduct" in arguing that Harrington sought the indemnity discussed in the letter because he knew that he could be liable for criminal activity.

We turn now to Mandell's challenge to the sentence imposed by the district court. "We review the reasonableness of a district court's sentence under a deferential abuse of discretion standard." *United States v. Hernandez*, 604 F.3d 48, 52 (2d Cir. 2010). This review "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). If we "identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be

deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (citation omitted).

Here, the district court held that the Guidelines range was "wildly out of balance" with the crimes committed by Mandell. Accordingly, the district court looked to sentences imposed on similarly situated white-collar criminals in determining a sentence significantly lower than that indicated by the Guidelines. Using the figures proposed by Mandell on appeal, the Guidelines range would have still been far in excess of the sentence actually imposed by the district court. Thus, any error in the district court's calculations was harmless, since the district court "would have imposed the same sentence in any event." *Jass*, 569 F.3d at 68 (internal quotation marks omitted).

We also reject Mandell's challenge to the forfeiture order, with one exception pointed out below. First, Mandell argues that the district court erred by not providing a preliminary forfeiture order, in compliance with Fed. R. Crim. P. 32.2. Because Mandell did not raise this objection before the district court, we review for plain error. *See, e.g.*, *United States v. Wagner-Dano*, 679 F.3d 83, 84 (2d Cir. 2012). Under plain error review, we reject this argument because even if Mandell had been given a preliminary forfeiture order, he could not have challenged the amount successfully, which means that his "substantial rights" were not affected. *See United States v. Olano*, 507 U.S. 725, 734 (1993). Second, Mandell argues that the district court erred by basing the forfeiture amount on the gross proceeds of his criminal enterprise rather than his

"personal gains." It is true that the relevant statute provides that "proceeds" means "the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). However, the statute also makes clear that the burden of proof is on Mandell "with respect to the issue of direct costs." *Id.* Because Mandell has failed to present any evidence and no more than cursory argument as to this issue, we hold that he has failed to meet his burden. *See, e.g.*, *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004).

Finally, Mandell argues that the forfeiture order should have made the defendants jointly and severally liable for forfeiture. The government concedes that this argument is correct under our decision in *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012). Accordingly, as to this sole issue, we vacate and remand so that the district court may amend the forfeiture order in light of this paragraph.

**AFFIRMED in part, VACATED AND REMANDED in part.**