BARRON, Circuit Judge.
Persis Trinidad was convicted of violating the Maritime Drug Law Enforcement Act (“MDLEA”) after his vessel was intercepted by United States authorities. Trinidad appeals the District Court’s application of a sentencing enhancement to him.[1] That enhancement applies if the defendant “acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer” on a vessel carrying controlled substances. U.S.S.G. § 2Dl.l(b)(3)(C). We conclude that the District Court did not err in ruling that Trinidad acted as a “navigator” within the meaning of the enhancement.
I.
On or about September 27, 2014, Trinidad and Algemiro Coar-Peña were intercepted in a 30-foot “go-fast type vessel” by the United States Coast Guard, approximately 80 nautical miles south of Lea Bea-ta, Dominican Republic.[2] The vessel bore no indicia of nationality.
Trinidad and Coa-Peña told the Coast Guard that the vessel was coming from Colombia, and one of the men claimed Colombian nationality for the vessel. After the Government of Colombia indicated that it could neither confirm nor deny registry *114 of the vessel, the Coast Guard determined that the vessel was one without nationality within the meaning of the MDLEA, 46 U.S.C. § 70502(c)(1)(A), and boarded the vessel. The Coast Guard found approximately 144 kilograms of cocaine onboard.
On January 8, 2015, Trinidad pleaded guilty to one count of possession with intent to distribute cocaine, in violation of provisions of the MDLEA. See 46 U.S.C. §§ 70503(a)(1), 70504(b)(1), 70506(a), and 70506(b). In so doing, Trinidad admitted that he and Coa-Peña took turns driving the vessel. Trinidad also admitted that he and Coa-Peña “set sail for the Dominican Republic utilizing Global Positioning Devices that were provided to them.”
The parties agreed to a total offense level of 31, unless Trinidad complied with the requirements set forth in U.S.S.G. § 2Dl.l(b)(17) (the so-called “safety-valve reduction”), in which case the parties agreed that the total offense level would be 29. The agreed-upon offense level did not include the two-level sentencing enhancement for Trinidad’s “act[ing] as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel.” U.S.S.G. § 2Dl.l(b)(3)(C).
The pre-sentence report (“PSR”) put together by the probation office calculated a total offense level of 33. The PSR calculated that level by taking into account the parties’ stipulated base offense level and by adding the two-level “pilot-navigator enhancement” set forth in U.S.S.G. § 2Dl.l(b)(3)(C). The PSR did not account for the two-level safety-valve reduction. The PSR added the enhancement because the probation officer determined that Trinidad “acted as a navigator” in the course of committing the underlying offense. Trinidad objected to the enhancement on the grounds that he was neither the captain nor the navigator of the vessel, as Trinidad only took turns steering the vessel and did not himself handle the vessel’s GPS system.
The District Court calculated a total offense level of 31 and sentenced Trinidad to a term of imprisonment of 108 months, at the low end of the applicable Guidelines range. In so doing, the District Court adopted both the two-level safety-valve reduction and the two-level pilot-navigator enhancement. The District Court applied the enhancement because it found that Trinidad navigated the vessel under the circumstances.
Trinidad appeals the application of the pilot-navigator sentencing enhancement to him.
II.
We review the District Court’s interpretation and application of this sentencing enhancement de novo and the District Court’s underlying “factual findings, which must be supported by a preponderance of the evidence, for clear error.” United States v. Lopez, 299 F.3d 84, 87 (1st Cir. 2002). The government’s sole argument to us is that the District Court did not err in finding that the enhancement applies because Trinidad acted as a navigator. We agree.
The undisputed record shows that Trinidad took turns steering the vessel with Coa-Peña, the only other passenger on board; that the vessel was traveling from Colombia to the Dominican Republic; that he and Coa-Peña “set sail ... utilizing Global Positioning Devices”; and that the vessel was intercepted after twenty-four hours on the high seas. Given these facts, the District Court reasonably concluded that Trinidad must have been responsible for ensuring that the boat stayed on course for some not insubstantial portion of the trip.
*115 Trinidad does contend that he did not “use” the GPS, and that he therefore cannot be said to have been navigating. But the District Court reasonably concluded that Trinidad must have relied on the GPS to keep the boat on course. Unlike on land, the District Court noted, Trinidad could not have been instructed to “[j]ust keep going straight.” Thus, the District Court did not clearly err in determining that, even if Trinidad did not himself set or calibrate the GPS device, it was impossible to conclude that he “[got] on a boat,” was told “that way,” and went. “That’s not the way it goes. You will end up God knows where. It’s a big ocean up there.”
Further supporting the District Court’s assessment of Trinidad’s onboard role— and reliance on instrumentation in guiding the boat’s course—is the portion of the colloquy at sentencing in which Trinidad’s counsel did not contest the notion that Trinidad had relied on the GPS to keep the boat on course. In that exchange, Trinidad’s counsel, in trying to .explain that Trinidad’s role was too minimal to make him a navigator, remarked, “If you tell him look at the GPS or the (Remarks in Spanish)—we’re going 280 east for example.” At that point, the District Court stated: “You have given it in. The moment that you use the compass, if you will, or you’re using the GPS as you mention, you are navigating.” So, while Trinidad contends that, in order to be deemed a navigator, he must have been, at points, “in charge of navigating the vessel and directing it to its ultimate destination,” we conclude that the District Court reasonably found Trinidad was in charge of doing just that during some not insubstantial portions of the trip.
We therefore agree that, on this record, Trinidad, who was an experienced fisherman, acted as a navigator during the journey from Colombia to the Dominican Republic. See The Oxford English Dictionary 259 (2d ed. 1989) (defining “navigate” to mean, among other things, “to sail, direct, or manage (a ship)” and “to plot and supervise the course of (an aircraft or spacecraft)”); The Random House Dictionary of the English Language 1282 (2d ed. 1987) (defining “navigate” to mean, among other things, “to direct or manage (a ship ...) on its course”); Webster’s Third New Int’l Dictionary 1509 (1981) (defining “navigate” to mean, among other things, “to steer, direct, or manage in sailing: conduct (a boat) upon the water by the art or skill of seamen”).[3]
In so concluding, we reject Trinidad’s contention that a person can only qualify as a navigator if he or she knows how to program or adjust a GPS—or other navigational device—and not if he merely relies on it to keep the boat on course. Nothing in the text or commentary of the enhancement supports such a restricted definition of the term “navigator.” Cf. United States v. Cruz-Mendez, 811 F.3d 1172, 1176 (9th Cir. 2016) (explaining that appropriate application of the “pilot” portion of the enhancement is “not dependent on a finding of any particular formal training”); United States v. Cartwright, 413 F.3d 1295, 1296-99 (11th Cir. 2005) (per curiam) (reviewing the defendant’s actions on board the vessel, rather than the extent *116 of his knowledge or training, in applying the “captain” portion of the enhancement).
We also reject Trinidad’s contention that he did not act as a-navigator because he was a subordinate to the other man on the vessel. By its own terms, the enhancement reaches anyone who “act[s] as a navigator,” just as it reaches captains and copilots alike. U.S.S.G. § 2Dl.l(b)(3)(C) (emphasis added). Thus, even assuming that Trinidad did not bear “ultimate responsibility” for the vessel’s safe passage, as he contends, that fact would not preclude the conclusion that he “act[ed] as a navigator.” Id. And to the extent Trinidad contends that the enhancement can only be applied to persons with special authority, he is also wrong. See United States v. Guerrero, 114 F.3d 332, 346 & n.16 (1st Cir. 1997), cert. denied 522 U.S. 870, 118 S.Ct. 184, 139 L.Ed.2d 124 & 522 U.S. 924, 118 S.Ct. 320, 139 L.Ed.2d 248 (1997).
III.
For the reasons given, we affirm.

. Apparently content with the "benefit of his bargain,” United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000), Trinidad does not challenge the validity of his plea agreement, and so does not challenge the Coast Guard’s determination that his vessel was a "vessel without nationality,” 46 U.S.C. § 70502(c)(1)(A), which the MDLEA defines as a "vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality,” icl at § 70502(d)(1)(C). We thus have no reason to question that determination. Moreover, because Trinidad makes no argument' that his guilty plea is invalid, he also makes no argument that his plea agreement must be vacated because Congress exceeded its constitutional authority under Article I in enacting the MDLEA. As we have made clear that such a challenge would not implicate our subject-matter jurisdiction, we do not address that issue either. E.g,, United States v. Nueci-Peña, 711 F.3d 191, 196-97 (1st Cir. 2013).

. "Because this appeal follows a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the unchallenged portions of the presentence investigation report ..., and the transcript of the disposition hearing.” United States v. Ocasio-Cancel, 727 F.3d 85, 88 (1st Cir. 2013).

. The definition of the term “navigate” found in the Sea Talk Nautical Dictionary is not inconsistent with the District Court's decision to apply the pilot-navigator enhancement. The District Court’s statements during the plea colloquy reflect the District Court’s conclusion that Trinidad must have adjusted the course of the vessel by "employing the elements of position, course, and speed” provided to him by the pre-programmed GPS, and thus that Trinidad must have "determined] [his] position, course, and speed” using the GPS, ‘ and adjusted the course of the vessel accordingly. Sea Talk Nautical Dictionary, http://www.seatalk.info (last visited September 13, 2016).