19-4208-cr (L)
*United States v. Torres et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

August Term 2020

(Argued:     April 21, 2021          Decided:     November 17, 2021)

Docket Nos. 19-4208-cr, 19-4231-cr

---

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

HEYDER RENTERIA SOLIS,

*Defendant,*

FERNEY SALAS TORRES, SAUL CALONJES SALAS,

*Defendants-Appellants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Before:

CHIN and PARK, *Circuit Judges*, and BOLDEN, *District Judge*.[*]

---

Appeals from judgments of the United States District Court for the Southern District of New York (Sullivan, *J.*) convicting defendants-appellants Ferney Salas Torres and Saul Calonjes Salas, upon their guilty pleas, of conspiring to manufacture, distribute, or possess a controlled substance on a vessel, and sentencing Salas Torres principally to 240 months' imprisonment and Calonjes Salas principally to 180 months' imprisonment. Defendants-appellants contend that the district court erred in its application of the United States Sentencing Guidelines by (1) denying a mitigating role reduction and (2) applying a sentencing enhancement for acting as pilot, captain, or navigator. They also argue that the district court imposed substantively unreasonable sentences.

AFFIRMED.

---

SEBASTIAN SWETT, Assistant United States Attorney (Danielle R. Sassoon, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, Acting

---

[*] Judge Victor A. Bolden, of the United States District Court for the District of Connecticut, sitting by designation.

United States Attorney for the Southern District of New York, New York, New York, *for Appellee.*

SAM A. SCHMIDT, Law Office of Sam A. Schmidt, New York, New York, *for Defendant-Appellant Ferney Salas Torres.*

JEREMY SCHNEIDER, Rothman, Schneider, Soloway & Stern, LLP, New York, New York (Rachel Perillo and Robert A. Soloway, *on the brief*), for *Defendant-Appellant Saul Calonjes Salas.*

CHIN, *Circuit Judge*:

Defendants-appellants Ferney Salas Torres ("Torres") and Saul Calonjes Salas ("Salas") appeal from judgments entered December 10 and 12, 2019, respectively, following their guilty pleas, convicting them of conspiring to manufacture, distribute, or possess a controlled substance on a vessel in violation of 46 U.S.C. §§ 70504(b)(2) and 70506 and 21 U.S.C. § 960(b)(2)(B). The district court sentenced Torres principally to 240 months' imprisonment and Salas principally to 180 months' imprisonment. On appeal, Torres and Salas challenge their sentences on procedural grounds, arguing that the district court erred by denying minor-role reductions pursuant to U.S.S.G. §§ 3B1.2 and 2D1.1(a)(5)(iii) and applying two-level enhancements for their roles as pilot or navigator of a vessel carrying controlled substances pursuant to U.S.S.G. § 2D1.1(b)(3)(C). They

- 3 -

also contend that the district court did not give appropriate weight to the 18 U.S.C. § 3553(a) sentencing factors and therefore imposed substantively unreasonable sentences. For the reasons set forth below, the judgments of the district court are affirmed.

## BACKGROUND

### I. *The Facts*

The facts are drawn from the presentence reports (the "PSRs") to the extent the findings were adopted by the district court and from the evidence presented at a *Fatico* hearing held August 28, 2019. They may be summarized as follows:

A "go-fast boat" or "*panga*" is a thirty-to-fifty-foot fishing boat with a hidden compartment below deck used by drug-trafficking organizations ("DTOs") to transport narcotics. Investors in the Colombian drug trade hire DTOs to transport cocaine from Colombia to Central America and ultimately to the United States. DTO members communicate with the investors, coordinate logistics, track the cocaine's location by GPS, purchase gasoline, and serve as lookouts. The DTOs sometimes arrange for a go-fast boat to transport the cocaine from the Colombian coast through the Pacific Ocean to Central America. Typically, the go-fast boat will rendezvous with a second boat in the open ocean

fifty to one hundred miles, but as many as six hundred miles, off the coast, and the crews will move the cocaine to the second boat to continue the journey.

Three to four seasoned mariners typically make up the crew of a go-fast boat. The three main roles are captain, navigator, and mechanic, but all crewmembers "help each other out" by doing things like "driving the boat." The captain's responsibilities include driving the boat and communicating with the DTO via satellite phone. The mechanic maintains the engine. The navigator puts coordinates into a GPS and ensures the go-fast boat is going the right way by "steer[ing] the boat." Each mariner stands to earn between $40,000 and $60,000 for about one week's work -- seven to ten times what a Colombian police officer makes in a year -- transporting a load of cocaine on a go-fast boat.

On March 17, 2018, the U.S. Coast Guard Cutter *Decisive* was patrolling eighty nautical miles southwest of Panama, an area known for narcotics trafficking, when it identified a vessel heading north at approximately thirty knots.[1] Thereafter the *Decisive* dispatched a small boat to investigate. The crew of the small boat discovered that the northbound vessel was a go-fast boat with three individuals aboard, approached within thirty yards with flashing

---

[1] A nautical mile is 6076.115 feet, or 1.15 statute miles. *Nautical Mile, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).

lights and sirens, and gave chase. Two of the individuals, Salas and Heyder Renteria Solis ("Solis"), jettisoned packages before they were stopped. The crew of the small boat determined that the third person, Torres, was the "pilot" of the go-fast boat.

The Coast Guard recovered thirty-four packages containing 945 kilograms of cocaine and 10 kilograms of amphetamine. On March 28, Coast Guard special agents transported Torres, Salas, and Solis to the United States, where they were arrested.

Torres and Salas are "typical mariners"; that is, they are fishermen having "low socioeconomic status" and "very little education" who live in Colombia. They were to be paid about $45,000 for the weeklong trip during which they were arrested. The go-fast boat had departed Buenaventura, Colombia, and the Coast Guard seized it "in the middle of the ocean" -- eighty nautical miles offshore -- just south of the border between Panama and Costa Rica.

Torres served as the captain of the go-fast boat, meaning that he was the primary "steerer" of the boat, most responsible, and most trusted by the DTO.

Salas also piloted the boat, served as navigator, and, as he concedes, "steered the boat." Salas App'x at 265; Salas Br. at 35.

Between 2004 and 2008, Torres participated in about ten narcotics-trafficking trips by crewing on boats transporting narcotics from Colombia to Central America. In 2008, he was arrested while serving as the captain of a go-fast boat transporting cocaine and was later convicted in the U.S. District Court for the Middle District of Florida of conspiracy to possess with intent to distribute cocaine while aboard a vessel. Torres was imprisoned until 2016 and then returned to Colombia.

Between 2005 and 2006, Salas participated in about six narcotics-trafficking trips. He was arrested in 2006 while crewing a go-fast boat transporting cocaine, was convicted of the same crime as Torres, and was imprisoned until 2011, also returning to Colombia thereafter.

In 2017, Torres and Salas began operating boats transporting narcotics again. They had completed three trips and, on the fourth, were apprehended by the Coast Guard.[2]

---

[2] Torres and Salas contended below that they resumed drug trafficking to earn money to pay off extorters. Neither Torres nor Salas reported the extortion to Colombian authorities and the Government had minimal corroboration for the explanations. The

## II.    *Proceedings Below*

In February 2019, Torres and Salas pleaded guilty to conspiracy to manufacture, distribute, or possess controlled substances on a vessel in violation of 46 U.S.C. §§ 70504(b)(2) and 70506 and 21 U.S.C. § 960(b)(2)(B).  The PSRs indicated that each was accountable for at least 450 kilograms of cocaine, which resulted in a base offense level of 38.  The PSRs recommended a two-level mitigating-role reduction of the offense level because Torres and Salas were "minor participant[s] in the offense," U.S.S.G. § 3B1.2, as well as an additional four-level decrease for recipients of § 3B1.2 adjustments, § 2D1.1(a)(5).

After a three-level reduction for acceptance of responsibility, each defendant's total offense level was 29.  Torres had a criminal history category of III, and the resulting Guidelines range was 108 to 135 months' imprisonment with a mandatory minimum of 60 months.  Torres's PSR recommended a sentence of 84 months' imprisonment.  Salas had a criminal history category of II, and the resulting Guidelines range was 97 to 121 months' imprisonment with a mandatory minimum of 60 months.  Salas's PSR recommended a sentence of 72 months' imprisonment.

---

district court did not credit either defendant's extortion argument.  Salas App'x at 321; Torres Dist. Ct. Dkt. No. 109 at 55-56.

At Torres's initial sentencing hearing held May 17, 2019, the district court scheduled a *Fatico* hearing to determine whether Torres qualified for a minor-role reduction or a pilot enhancement under the Guidelines. Salas's initial sentencing hearing was adjourned for the same reason.

On August 28, 2019, the district court held the *Fatico* hearing. Special Agent Ronald Sandoval ("Sandoval") of the Drug Enforcement Agency testified for the government about the Colombian drug trade and his investigation into Torres and Salas. The district court did not rule on the issues at the conclusion of the hearing but set a schedule for posthearing submissions.

Torres's and Salas's sentencings were held on December 10 and 12, 2019, respectively. At Torres's sentencing the district court began with a base offense level of 38. The district court did not apply a minor-role two-level reduction, finding that Torres's compensation -- $45,000 to $50,000 -- suggested the "importance" and "necessity" of his role on the boat. The district court applied a two-level pilot enhancement, finding that piloting a go-fast boat requires skill, an extended trip at sea, and a rendezvous in the open ocean, and concluding that Torres piloted the go-fast boat within the meaning of the enhancement. After applying a three-level reduction for acceptance of

responsibility, the district court concluded that the offense level was 37, the criminal history category was III, and the Guidelines range was 262 to 327 months.

During a discussion of the 18 U.S.C. § 3553(a) factors, Torres, through counsel, argued that he became reinvolved in drug trafficking to repay someone who paid a ransom for Torres's wife and daughter when they were kidnapped. The district court found this argument unpersuasive because it was not corroborated by letters from family members or by Special Agent Sandoval, and because Torres had a prior conviction for the same conduct. The district court also found Torres to be "unique" because he was previously convicted of the same crime, served a ten-year sentence, and reoffended within two years of his release. Thus, the district court concluded that Torres's sentence would not create an unwarranted disparity with other sentences because he was not situated similarly to other defendants. The district court sentenced Torres to 240 months' imprisonment, to be followed by five years of supervised release.

At Salas's sentencing on December 12, 2019, the district court began with a base offense level of 38. The district court found that Salas's role was "similar" to Torres's, and although Torres had "greater responsibility," defendants

- 10 -

were paid the same amount and both were "responsible at various times for directing and navigating the boat," which required "skill and experience." Accordingly, the district court did not apply a minor-role two-level reduction. As to the pilot enhancement, the district court concluded that Salas played a "pilot or navigator" role on the boat based on inferences drawn from Special Agent Sandoval's testimony about the makeup of a typical crew and the evidence that Torres and Solis were the captain and mechanic, respectively. The district court added those two levels and subtracted three for acceptance of responsibility, leaving Salas with an offense level of 37, a criminal history category of II, and a Guidelines range of 235 to 293 months.

As to mitigating factors, the district court found that the extortion plot Salas described was "very implausible," did not "make a lot of sense," and ultimately did not mitigate Salas's wrongdoing. The district court sentenced Salas to 180 months' imprisonment, to be followed by five years of supervised release.

These appeals followed.

*DISCUSSION*

Torres and Salas appeal the sentences on procedural grounds,

arguing that the court erred in calculating the applicable ranges under the

Guidelines by denying a reduction for minor role under U.S.S.G. § 3B1.2(b),

which would have reduced the offense level by two levels and entitled

defendants to an additional four-level decrease under U.S.S.G. §§ 2D1.1(a)(5),[3]

and by wrongly applying a two-level increase for their roles as captain, pilot, or

navigator of a vessel carrying narcotics under U.S.S.G. § 2D1.1(b)(3). They also

appeal the sentences on substantive grounds.

In reviewing a sentence for substantive and procedural

reasonableness, we apply a deferential abuse-of-discretion standard. *United*

*States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014). As to role adjustments, we

review the district court's findings of fact as to the defendant's role for clear

error, *United States v. Gomez*, 31 F.3d 28, 31 (2d Cir. 1994), and "reverse[] the

district court's conclusion only for abuse of discretion," *United States v. Colon*, 220

F.3d 48, 51 (2d Cir. 2000) (citation omitted). Defendants must establish

---

[3] Torres and Salas both had a base offense level of 38. Hence, if they qualified for a mitigating role adjustment under § 3B1.2, the offense level would have been reduced by 4 levels. U.S.S.G. § 2D1.1(a)(5)(iii).

entitlement to a minor-role reduction by a preponderance of the evidence. *United States v. Kerr*, 752 F.3d 206, 223 (2d Cir. 2014), *as amended* (June 18, 2014).

We review a district court's interpretation and application of the Guidelines *de novo*, *see United States v. Adler*, 52 F.3d 20, 21 (2d Cir. 1995) (per curiam), and its factual findings for clear error, *see United States v. Mulder*, 273 F.3d 91, 116 (2d Cir. 2001). "If we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

"Our review for substantive unreasonableness is particularly deferential." *Thavaraja*, 740 F.3d at 259 (internal quotation marks omitted). Because district courts are largely responsible for sentencing, our role is to "patrol the boundaries of reasonableness." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008). "We will identify as substantively unreasonable only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the

- 13 -

administration of justice." *Thavaraja*, 740 F.3d at 259 (internal quotation marks

omitted).

We discuss the challenges in turn.

## I.    *Procedural Unreasonableness*

Torres and Salas argue that the district court committed procedural

error when it denied them a reduction for minor role because they established by

a preponderance of the evidence that they were minor participants in the

offenses.  Next, they argue that the district court erroneously applied the pilot

enhancement because they did not possess the special skills or authority

necessary to have the enhancement applied.

### A.    *Minor-Role Reduction*

Guideline § 3B1.2(b) allows for a two-level reduction in offense level

when the defendant is a "minor participant," meaning that the defendant is "less

culpable than most other participants in the criminal activity, but whose role

could not be described as minimal."  U.S.S.G. § 3B1.2(b) cmt. n.5.  The minor

participant determination is based on the "totality of circumstances," which may

include the following:

> (i) the degree to which the defendant understood the scope and
> structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]

(v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* n.3.

We are not persuaded that the district court abused its discretion when it denied defendants minor-role reductions. Defendants contend that they had only limited knowledge of the criminal activity; no role in planning, organizing, or financing the activity; and no decision-making authority. Even assuming these facts to be true, however, the district court did not abuse its discretion when it gave these facts less weight than others because a reduction "will not be available simply because the defendant played a lesser role than his co-conspirators." *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir. 2001) (internal quotation marks omitted), *as amended* (July 19, 2001).

Indeed, the district court found that the minor-role reduction did not apply because Torres and Salas knew they were responsible for transporting nearly a ton of narcotics, employed skill in crewing the go-fast boat, were

- 15 -

recidivists, understood the scope of the conspiracy, and stood to earn about $45,000 each for their roles in the offense. As to Torres, the district court also found that he was in communication with other traffickers. The district court concluded that these facts underscored the "importance" and necessity" of Torres's role, Torres Dist. Ct. Dkt. No. 109 at 19, as well as the "skill" and "decision-making authority" employed by Salas, Salas App'x at 276-77. Even assuming defendants played a lesser role than others who planned, organized, and financed the narcotics activity, the district court did not abuse its discretion in concluding that defendants were not minor participants and declining to grant them the reduction. *See, e.g.*, *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990) (per curiam) (holding that although some narcotics "couriers" may receive a minor-role reduction "based upon their culpability in light of the specific facts," that conclusion "is by no means mandated").

**B.** *Pilot Enhancement*

Pursuant to U.S.S.G. § 2D1.1(b)(3), a two-level enhancement is appropriate when "the defendant unlawfully imported or exported a controlled substance" and "acted as a pilot, copilot, captain, navigator, flight officer, or any other operation officer aboard any craft or vessel carrying a controlled

substance."  When determining whether an enhancement is applicable, the district court uses the preponderance of the evidence standard.  *United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007) (per curiam).

The Guidelines do not define the terms "pilot, copilot, captain, navigator, flight officer, or any other operation officer," nor has this Court defined these terms in the context of this enhancement.  Defendants argue that the terms indicate possession of special skills or authority.  Accordingly, they contend that the district court erred in applying the pilot enhancement because they merely "steered" the boat but did not have special skills or authority and, therefore, were not a pilot or navigator.

We are not persuaded.  First, defendants' arguments fail as a matter of textual interpretation.  Defendants' definitions are inconsistent with the plain meanings of "pilot" and "navigator."  "Pilot" means "one employed to steer a ship."  *Pilot, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).  "Navigator" means "one [who] navigates or is qualified to navigate," and "navigate" means, among other things, "to steer or manage (a boat) in sailing."  *Navigator, Navigate, Merriam-Webster's Collegiate Dictionary* (11th ed. 2003).  Under these ordinary

- 17 -

dictionary definitions, "pilot" and "navigator" do not require possession of special skill, authority, or training.

Second, the circuits that have considered the meaning of "pilot" and "navigator" within § 2D1.1(b)(3)(C) have declined to interpret those terms to bear the more technical definitions advocated by defendants. *See United States v. Guerrero*, 114 F.3d 332, 346 (1st Cir. 1997) (affirming district court's finding that defendant "acted as a pilot" within the meaning of the pilot enhancement because defendant's conduct fell within "the common dictionary definition of 'pilot'": "a person hired to steer a vessel"*); United States v. Bautista-Montelongo*, 618 F.3d 464, 467 (5th Cir. 2010) (holding that no special skills are required; trial court properly applied pilot enhancement to person who "drove a boat containing contraband"); *United States v. Senn*, 129 F.3d 886, 896-97 (7th Cir. 1997) (holding that pilot enhancement does not require "proof of special skill"), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); *United States v. Cruz-Mendez*, 811 F.3d 1172, 1176 (9th Cir. 2016) (applying a "common sense approach" rather than "rigid requirements of professionalism" to the "pilot/captain" enhancement and holding that district court properly applied enhancement to

person who "operated a boat . . . in open water" (internal quotation marks omitted)).[4]

Here, defendants' conduct is consistent with the ordinary meaning of "pilot" and "navigator," as they were both employed to steer or navigate a boat. Each stood to earn $45,000 for operating the go-fast boat to transport a substantial load of narcotics. The Coast Guard observed Torres "piloting" the boat, and Torres identified himself as the captain to Special Agent Sandoval. Salas piloted and navigated the boat for at least part of the trip and, as he concedes, steered the boat. Additionally, go-fast boats are typically crewed by a captain, a mechanic, and a navigator, and Torres was the captain and Solis was the mechanic. The district court reasonably inferred that the third crewmember, Salas, must have filled the third role, navigator. *See United States v. Gaskin*, 364 F.3d 438, 464 (2d Cir. 2004) ("[A] sentencing court, like a jury, may base its factfinding on circumstantial evidence and on reasonable inferences drawn therefrom.").

Third, although the ordinary definitions of pilot and navigator do not require special skill, the district court found that defendants had special

---

[4] *Guerrero*, *Bautista-Montelongo*, and *Senn* interpret U.S.S.G. § 2D1.1(b)(2), a previous version of § 2D1.1(b)(3)(C).

- 19 -

skills. Piloting the boat required "real special skill" and "experience." Salas

App'x at 265, 277. There was "more to it" than "putting [a destination] in your

GPS to figure out how to get from here [to] Broadway." Torres Dist. Ct. Dkt. No.

109 at 20. The job required "a long time at sea" and traveling "hundreds of miles

out into the open ocean." *Id.* As the district court observed, this was "no small

feat" and was not something, for example, that the individuals in the courtroom

other than defendants would have been able to do. Salas App'x at 264-65.

Defendants urge us to adopt the reasoning of a First Circuit dissent

advocating the use of a nautical dictionary to define the term "navigate" as "'[t]o

safely operate a vessel employing the elements of position, course and speed,'"

which would require "extra abilities." *United States v. Trinidad*, 839 F.3d 112, 116,

119-20 (1st Cir. 2016) (Torruella, *J.*, dissenting) (quoting *Navigate*, Sea Talk

Nautical Dictionary, http://www.seatalk.info/ (last visited Oct. 6, 2016)). But

even if we were to employ a technical definition, we would not reach a different

result because the district court properly found that defendants here had special

skills.

Further, the *Trinidad* dissent provides no justification for employing

a nautical dictionary rather than an ordinary one other than the avoidance of an

"unjust result." *Id.* at 119. Nor does the Guideline itself warrant departure from ordinary meaning. Section 2D1.1(b)(3)(C) refers to crewmembers of boats and aircraft. The dissent's approach would require use of a nautical dictionary for some words and an aeronautical dictionary for others. The Guideline lacks technical references that could suggest that the drafters used "pilot" and "navigator" in a technical sense such as to warrant the use of a technical dictionary. *Cf. Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 571 (2012) (considering technical definition where statute contained technical language). Finally, on this record, we are not persuaded that the use of an ordinary dictionary would lead to an unjust result. Accordingly, we decline to employ a meaning other than ordinary meaning when interpreting the terms in U.S.S.G. § 2D1.1(b)(3)(C).

Defendants observe that the plea agreements and PSRs did not include the § 2D1.1(b)(3)(C) enhancement, but they do not argue that the district court committed procedural error by considering it *sua sponte*. In any event, the plea agreements explicitly provided that the district court was not bound by the agreements' Guidelines stipulations.

- 21 -

Finally, even if the application of the enhancement were inappropriate, the district court made clear that it would have imposed the same sentences in any event. First, the district court noted on the record at the sentencings that if the two-level pilot enhancement did not apply, a two-level enhancement for transporting methamphetamine would apply instead, as defendants were also transporting ten kilograms of methamphetamine. Torres Dist. Ct. Dkt. No. 109 at 21, 25; Salas App'x at 286. Second, when sentencing Torres, the district court found that "[a]nything less" than a twenty-year sentence "would not reflect [Torres's] culpability." Torres Dist. Ct. Dkt. No. 109 at 58. When sentencing Salas, the district court observed that a fifteen-year sentence was "appropriate" based on Salas's recidivism. Salas App'x at 322. Thus, any error would be harmless. *See Mandell*, 752 F.3d at 553 ("If we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." (internal quotation marks omitted)).

Accordingly, we hold that the sentencing court did not err in its findings or abuse its discretion in applying the pilot/navigator enhancement.

## III.    *Substantive Unreasonableness*

Torres and Salas argue that the district imposed substantively unreasonable sentences because it failed to properly weigh the 18 U.S.C. § 3553(a)(2) factors, resulting in sentences "greater than necessary" to achieve sentencing goals.

District courts are to use the Guidelines as a "starting point" and then make an independent sentencing determination, taking into account the "nature and circumstances of the offense and the history and characteristics of the defendant" and all other statutory factors.  18 U.S.C. § 3553(a); *see Cavera*, 550 F.3d at 188-89.  "The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge, with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case."  *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks and citations omitted).

Torres's 240-month sentence and Salas's 180-month sentence were neither shockingly high nor unsupportable as a matter of law.  Applying the particularly deferential standard for substantive reasonableness review, we

conclude that the district court's decision fell within the range of permissible decisions.

As to Torres, the district court considered the "incredibl[e] serious[ness]" and "impact" of the crime, his previous conviction for the same crime, and the need for deterrence. Torres Dist. Ct. Dkt. No. 109 at 54. The district court did not credit Torres's duress explanation, finding it to be unsubstantiated and inconsistent with testimony by Special Agent Sandoval. *Id.* at 55. After considering all the factors, the district court concluded that "[a]nything less" than a 240-month sentence would be "inappropriate" and "would not reflect [Torres's] culpability." *Id.* at 58.

Torres argues that the district court did not give "appropriate weight" to the duress he encountered, his educational and medical history, sentencing disparities, and other factors. But "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge," *Broxmeyer*, 699 F.3d at 289 (internal quotation marks and citations omitted), and the district court gave careful consideration to all of the relevant factors here.

As to Salas, the district court considered the "destructive harm" of the crime and "amount of drugs" involved, his previous conviction for the same crime, his duress argument, his personal history, sentencing disparities, his culpability vis-à-vis Torres, and the need for deterrence. The district court "balance[d]" and "weigh[ed]" those and other factors, and carefully considered them, noting on the record that the task was "very difficult" and that he had been "thinking about this case for quite some time" and "preparing for sentencing for many months." Salas App'x at 291. The district court concluded that a sentence of 180 months was "appropriate" while constituting a "significant," but not "deep," discount. *Id.* at 322-23.

Salas argues that the district court gave no weight to his life circumstances and other factors and did not give the appropriate weight to the need to avoid sentencing disparities. These arguments are belied by the record. The district court explicitly considered Salas's life circumstances, as well as other pertinent factors. The district court and counsel also discussed sentencing disparities and whether and how other defendants were similarly situated to Salas. Salas App'x at 305-06.

Accordingly, Torres's and Salas's sentences are not substantively unreasonable, and the district court did not abuse its discretion in imposing them.

## *CONCLUSION*

For the foregoing reasons, the judgments of the district court are AFFIRMED.